**TAC TRAVEL AMERICA CORPORATION, Plaintiff,**

v.

**WORLD AIRWAYS, INC., Defendant.**

**No. 77 Civ. 4307.**

United States District Court, S. D. New York.

Jan. 19, 1978.

Stanley R. Goldstein, New York City, for plaintiff; Harold L. Kestenbaum, New York City, of counsel.

Teitler & Teitler, New York City, for defendant; Michael F. Teitler, New York City, of counsel.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendant World Airways, Inc. (hereinafter "World"), has moved, pursuant to 9 U.S.C. § 3, the Federal Arbitration Act, for a stay of this action pending arbitration of plaintiff's claim. World asserts that plaintiff should be compelled to arbitrate because a contract between the parties contains an arbitration clause.

Without first demanding arbitration, plaintiff brought this diversity action to recover $750,000.00 compensatory and punitive damages for defamation.

This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The contract in which the arbitration clause is included is one "evidencing a transaction involving commerce." 9 U.S.C. §§ 1, 2; *Metro Industrial Painting Corp. v. Terminal Const. Co.,* 287 F.2d 382, 384 (2d Cir. 1961).

Plaintiff Tac Travel America Corporation (hereinafter "Tac"), is a New York corporation which provides group air travel chartered trips. Tac does not own or operate any aircraft. It regularly charters aircraft from others in order to carry on its business of offering group air travel package tours to the public through independent travel agencies. Defendant World is a Delaware corporation with its principal place of business in Oakland, California. It is a certificated supplemental air carrier which owns or leases and operates aircraft.

Tac and World entered into an aircraft charter agreement (the "Agreement") dated September 16, 1976, by which World chartered aircraft to Tac for a series of ten weekly round-trip flights between various United States cities and Miami, Florida. The flights were to commence January 23, 1977. Difficulties developed with the very first return flight. A tour flight left New York City on January 23, 1977 for Miami and was scheduled to return to New York from Miami on January 30, 1977. Plaintiff's complaint alleges, *inter alia,* that defendant announced that the return flight was delayed for several hours and that "defendant's flight crew, agents and employees announced and communicated to each and every Passenger that the delay was inexcusable and wholly the fault of plaintiff . . . ." (Complaint, ¶ 9. b.) Plaintiff asserts that as a result of defendant's alleged conduct "plaintiff's good name, its professional standing and its reputation in the trade were injured . . . ." (Complaint, ¶ 11.)

The charter Agreement contains a provision governing "Reports and Notices" as well as an arbitration clause. Article 6.4 provides as follows:

"Charterer agrees at its own expense to give such notice to charter flight participants as World shall request upon the occurrence of any event which causes or may cause or result in the delay or cancellation of any one or more charter flights. World may elect, but shall not be required, to give independent notice thereof to charter flight participants. World shall incur no liability of *any nature* to Charterer or any travel company or participant as a result of giving such notice or refraining from doing so." (Emphasis added.)

Article 8 provides as follows:

"8.1 Any dispute between the parties hereto with respect to this agreement or concerning any delays or failures of performance thereunder shall be determined by arbitration at San Francisco, California pursuant to the rules of the American Arbitration Association. The decision in such arbitration shall be final and binding on the parties.

8.2 Any claim for personal injury or death or for loss or damage to baggage shall not be covered by Article 8.1."

Defendant contends that plaintiff's claim is *not* one for personal injuries and, therefore, is not excepted from arbitration according to Art. 8.1, but is an arbitrable dispute because the alleged defamation arises out of the editorial content of defendant's notice to charter flight participants of a delayed or cancelled flight, which defendant is authorized to give by Art. 6.4 of the Agreement.

Tac opposes arbitration of this claim, which, it argues, is a claim for a "personal injury", *i. e.,* slander, excluded from arbitration according to Art. 8.2 of the Agreement.

■ Although the Agreement provides that it shall be interpreted according to California state law, the issue of whether and to what extent the parties have agreed to arbitrate is to be determined here according to federal law. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 404 (2d Cir. 1959), *cert. granted* 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dis'd. per stip.,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

■ The ordinary rules of contract construction determine whether a party is compelled to arbitrate a particular controversy. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241–43, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Interocean Ship. Co. v. National Ship. & Trading Co.,* 523 F.2d 527, 539 (2d Cir. 1975). This Agreement specifically contemplates that disputes may arise as a result of giving or not giving notice of flight delays and/or cancellations (Agreement, Art. 6.4), as is evidenced by the language of the last sentence of that article quoted at pp. 2, 3, *supra.* The broad language of that provision, that World shall incur "no liability of *any nature* " with respect to such notice, must be taken to include liability in tort as well as for breach of contract.

The decision in *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Union,* 359 F.2d 598 (2d Cir. 1966), does not compel a different result here. That case merely holds that an employer, by signing a collective bargaining agreement containing a general arbitration clause, does not thereby give up the remedy granted by § 303 of the Labor Management Relations Act, nor does the agreement to arbitrate include tortious conduct by a labor union within those contract disputes which are arbitrable. In *Old Dutch Farms,* the claimed unlawful union activity was factually removed from performance under the collective bargaining agreement, in that the conduct occurred in response to an alleged breach of the agreement by the employer. Here, the alleged tortious conduct occurred while World was performing under the contract.

■ The language of Art. 6.4 must, of course, be construed together with the other contract provisions, particularly the arbitration clause. Art. 8.1, the general agreement to arbitrate, is expressed in the broadest terms, requiring arbitration of "any disputes between the parties *with respect to this agreement or concerning any delays or failures.*" (Emphasis added.) There is no doubt that the alleged slander gives rise to

a dispute clearly within the scope of that clause.

The later provision in Art. 8.2, which excludes "any claim for personal injury or death or for loss or damage to baggage," does not exclude plaintiff's instant claim from arbitration. The arbitration clause uses the language "any dispute between the parties" while the exclusion provision speaks of "claims." If the exclusion provision was intended to exclude certain claims between the parties to the Agreement from arbitration, the parties could have used the language they had just used in the preceding paragraph. The language in the exclusion provision suggests that the parties contemplated excluding only customer-passenger claims for losses or injuries from arbitration. It is improbable, given the nature of the contract, that the parties contemplated that any direct claims for personal injury or death and damage or loss of baggage would arise between them, and indeed such claims are usually the subject of indemnity insurance. The parties could not, by virtue of their agreement to arbitrate, compel their customer-passengers to arbitrate. If customer claims are not to be arbitrated it would logically follow that World's or Tac's liability to one another with respect to such claims should not be arbitrated, but rather should be litigated and determined in the same proceedings as the customer's claim and consistently with that claim. It cannot be said that the exclusionary clause "*unambiguously* cover[s] the type of dispute sought to be arbitrated." *Strauss v. Silvercup Bakers, Inc.*, 353 F.2d 555 (2d Cir. 1965), (emphasis added).

■ Even if the charter agreement were to be construed so that a claim for personal injury between the parties to the Agreement were to be excluded from Arbitration, it is well settled that a party cannot avoid an agreement to arbitrate by labeling a breach of contract claim as a tort claim. *Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir. 1967). Under the peculiar factual circumstances of this case, the slander claim presents the same factual issues as a breach of contract

claim. Proof of the truth or falsity of the alleged slander would decide the slander claim and would also determine whether World breached the contract by its conduct in giving notice of the flight delay, or by the manner of giving the notice, and its content.

The instant claim and contract are factually distinguishable from those in *Fuller v. Guthrie*, 565 F.2d 259 (2d Cir. Nov. 18, 1977), in which the Court of Appeals refused to compel arbitration of a slander claim. In that case, involving the folk musician Arlo Guthrie, it appeared that Guthrie contracted with a promoter to perform at a concert in Burlington, Vermont. During the concert, Guthrie told the audience that "[E]veryone here is not getting paid . . . . The cops, the electricians, us. . . . . Fuller [the concert promoter] has ripped you off." The promoter's complaint alleged a claim for breach of contract, because Guthrie did not complete his performance, and an additional claim in tort for slander. The contract's arbitration clause provided that all disputes "involving the musical services" would be submitted to an arbitration board. Chief Judge Kaufman, writing for the panel, held that

> "[I]t would stretch the meaning of 'musical services' beyond any reasonable definition to suggest that the slander claim falls within it. Although the agreement to arbitrate was undoubtedly intended to cover disputes arising from the character of Guthrie's performance and his payment for it, it is highly unlikely that the parties could have foreseen, no less intended, to provide a forum for wholly unexpected tortious behavior." 565 F.2d at 261.

The conduct which Tac alleges to have occurred in this case was not "wholly unexpected," as in *Guthrie*, since the Agreement, in Art. 6.4, refers to liability in connection with giving or not giving notice of delays or cancellations, a regular part of defendant's services required under the contract, and as to which a dispute was foreseeable. The slander alleged by Tac extended only to it, while the slander alleged in *Guthrie* also

concerned persons not parties to the arbitration clause or the contract. This fact convinced the Second Circuit that the "breach of contract claim would not reach the truth or falsity of these remarks [concerning non-contracting persons]." At 261.

The language employed in the Agreement here is reasonably construed to compel arbitration of this dispute, which arises from an act integral to performance of the contract itself, contrasted with Guthrie's wholly unrelated remarks passed during a musical performance. We must remain mindful of the federal policy favoring arbitration. *See, Belk v. Allied Aviation Service Company of New Jersey*, 315 F.2d 513, 517 (2d Cir. 1963); *Metro Industrial Painting Corp. v. Terminal Const. Co.*, 287 F.2d 382, 385 (2d Cir.), *cert. denied* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961).

Defendant World's motion is granted to the extent of directing entry of a final judgment which will compel and direct arbitration of plaintiff's claim according to the provisions of the Agreement. All other relief will be denied. Any party hereafter seeking the confirmation, rejection or modification of such award as the arbitrator may hereafter make, shall do so in a new plenary proceeding for that purpose.

Nothing contained herein shall be construed as expressing any opinion as to the merits of the dispute which has been held arbitrable.

Settle a final judgment on five (5) days notice, which shall be served on or before January 28, 1978.

So Ordered.