Kerwin F. McMAHON, Plaintiff,

v.

RMS ELECTRONICS, INC., Defendant.

No. 85 Civ. 3799 (RWS).

United States District Court,
S.D. New York.

Aug. 23, 1985.

Sage, Gray, Todd & Sims, New York City, for plaintiff; John J. Hathaway, New York City, of counsel.

Morgan, Lewis & Bockius, New York City, for defendant; John Linsenmeyer, Terri L. Weiss, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant RMS Electronics, Inc. ("RMS") has moved to stay all judicial proceedings under this action pending arbitration of claims asserted by plaintiff Kevin F. McMahon ("McMahon"). RMS asserts that every issue raised by McMahon's complaint derives from an employment agreement between the two parties and that the arbitration clause provided in the agreement requires a stay of court proceedings pursuant to 9 U.S.C. § 3. In response, McMahon concedes that his five breach of contract claims are subject to arbitration but urges that three claims based on alleged defamatory statements made by RMS and its president are not governed by the arbitration clause and are therefore appropriately raised before this court. For the following reasons RMS' motion is granted with respect to all of McMahon's claims except his final defamation claim based on statements made by RMS' president.

### Pleadings

To decide this motion, it is sufficient merely to examine the employment agreement between RMS and McMahon and the claims stated in McMahon's complaint without determining the validity of the allegations asserted in that complaint.

It is undisputed that on or about March 1, 1981 RMS and McMahon entered into a valid employment agreement (the "Agreement") which defined the terms and conditions of McMahon's employment as the director of one of RMS' operating divisions. The Agreement specified McMahon's job description, compensation and other benefits. It also provided that RMS could terminate McMahon's employment only if he committed any act of malfeasance or nonfeasance, including intemperance, dishonesty or the unauthorized pledge of RMS' credit. Finally, the Agreement included an arbitration clause requiring that "[a]ll disputes and claims arising in connection with this Agreement" shall be settled in arbitration. The Agreement was amended twice, to increase McMahon's compensation and to extend his term of employment to December 31, 1988. RMS terminated McMahon's employment on March 20, 1985, over three years before the expiration of the Agreement.

Following his termination, McMahon brought the present action in this court alleging eight causes of action. The first five claims seek damages based on RMS' alleged breach of contract resulting from the company's alleged wrongful termination of McMahon. McMahon's other three claims, however, are not based on the Agreement. These claims seek damages for alleged defamatory statements made

by RMS and its president. McMahon alleges that on May 3 and May 9, 1985, RMS published a notice to RMS shareholders and filed a document with the Securities and Exchange Commission which stated that McMahon's contract had been terminated. McMahon's complaint alleges that these statements wrongfully injured his reputation and standing. McMahon's third defamation claim involves a statement made one week before McMahon's termination by the president of RMS to another employee that McMahon was the "company drunk" and was interfering with the president's operation of the company. McMahon now asserts that these three tort claims are beyond the scope of the arbitration clause found in the Agreement.

**Discussion**

■■■ If the issues raised by plaintiff's defamation claims are "referable to arbitration under an agreement in writing for such arbitration" then this court, given the motion by RMS, must stay these judicial proceedings as provided in 9 U.S.C. § 3 (1982). Before issuing a stay, this court must determine that the parties have agreed to arbitration and that the present dispute falls within that agreement. *See Banque de Paris et Des Pays-Bas v. Amoco Oil Co.*, 573 F.Supp. 1464 (S.D.N.Y. 1983). The resolution of the question of arbitrability turns on an interpretation of the arbitration clause. While such clauses are to be broadly construed, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers v. Warrier & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). Whether a dispute is covered by the arbitration clause is thus an issue for the court to decide. *See Prudential Lines Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir.1983).

■■■ In this Circuit, agreements to arbitrate disputes arising from a contract do not extend to tort claims that, although factually related, are considered legally distinct from the contractual relationship between the parties. In *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees*

*Union*, 359 F.2d 598 (2d Cir.), *cert. denied*, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), the court refused to stay a tort action brought against a union even though it was connected with the subject matter of the collective bargaining agreement containing the arbitration clause. The court concluded that "absent a clear, explicit statement in the formal contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed ... that the parties did not intend to withdraw such disputes from judicial scrutiny." *Id.* at 603. Similarly, in *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir.1977), the court refused to stay a slander claim on the basis of a contractual arbitration clause. The court found that the arbitration clause was intended to cover disputes relating to the performance of the contract but could not be interpreted to extend to "wholly unexpected tortious behavior." *Id.*

■■■ The tort claims considered in the above authorities are distinguishable from a tort claim which is a reformulation of a breach of contract claim. When a tort claim is based in substantial part on the contractual rights and responsibilities of the two parties, then it must be arbitrated as required by an arbitration clause. *Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir.1967). Thus, in *Tac Travel America Corp. v. World Airways, Inc.*, 443 F.Supp. 825 (S.D.N.Y.1978), the court stayed a defamation claim for alleged wrongful statements made during the execution of a charter agreement. The court's decision was based on the "peculiar factual circumstances" of the case in which the charter agreement specifically addressed the liability of the charterer for any statements made during the charter flight. *Id.* at 827–28. Under these circumstances, the defamation claim was encompassed by contractual agreement between the parties.

The Second Circuit has recently considered a case which both parties agree must be evaluated in light of the issues here. In *Coudert v. Paine Webber Jack-*

*son & Curtis*, 705 F.2d 78 (2d Cir.1983), the court held that a defamation action based on an employer's statements made after the termination of employment did not constitute a controversy "arising out of the employment or termination of employment" as provided in the arbitration clause covering New York Stock Exchange members and their registered representatives. Notwithstanding the fact that the alleged false statements were related to the employee's termination of employment, the Court ruled that the tort claim was independent of the employment contract and its arbitration clause. The court reasoned that claims arising after the expiration of an employment agreement containing an arbitration clause are beyond the scope of the arbitration clause. *Id.* at 81–82.

■ However, in my view, *Coudert* is distinguishable. In *Coudert,* the court found that there was no clear nexis between the employment relationship of the two parties and the defamatory statements made by the employer. In that case, the allegedly defamatory statements were made to co-workers, customers and securities exchanges following plaintiff's voluntary submittal of her resignation. Here the allegedly defamatory statements are integrally linked to the contractual relationship between the parties. The Agreement carefully specifies the basis on which McMahon could be terminated for cause. The company's statements regarding McMahon's termination were required reports that simply stated the actions taken by RMS. McMahon's defamation claims necessarily turn on whether he was terminated with or without cause, an issue which involves an interpretation of the contractual relationship between the parties. The arbitration clause contained in the Agreement clearly indicates that the parties agreed to arbitrate any dispute which calls into question the validity of McMahon's termination. Since this issue is integral to McMahon's first two defamation claims, those claims must be stayed pending arbitration. 9 U.S.C. § 3. The mere fact that these statements were made after McMahon's termination does not compel a differ-

ent conclusion since "the temporal aspect is an inevitable consequence" of the company's reporting an event which terminated the employment agreement. *See Downing v. Merrill Lynch, Pierce, Fenner & Smith,* 725 F.2d 192, 194–95 (2d Cir.1984).

■ McMahon's final claim alleges that RMS' president stated to another employee, one week before McMahon's termination, that McMahon was the "company drunk" and that he was interfering with the president's operation of the company. This defamation claim, unlike the previous two claims, is not encompassed by the arbitration clause in the Agreement. Although the statements regarding McMahon's drinking habits may be relevant to his claim of wrongful termination, the resolution of the defamation claim does not require reference to the underlying contract. Unlike the previous two claims, the issues underlying this final defamation claim do not require an interpretation of the contractual agreement between the two parties. Furthermore, the defamation claim is not arbitrable simply because the statements were made during the term of McMahon's employment. While the *Coudert* opinion implies that such an action would be arbitrable, the arbitration clause at issue here is narrower in scope than the one discussed in the *Coudert* case. Here the clause governs only those disputes arising in connection with the employment contract, whereas in *Coudert,* the clause extended to any disputes arising from the employment itself or its termination. *See Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1167 (9th Cir.1984).

■ Finally, the decision not to stay McMahon's last defamation claim is not altered by the presence of other claims in McMahon's complaint which are concededly arbitrable. The Supreme Court has recently rejected the argument that a district court may refuse to deny arbitration when arbitrable and nonarbitrable claims arising from the same transaction are factually intertwined. *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84

L.Ed.2d 158 (1985). *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (Federal Arbitration Act *"requires* piecemeal resolution when necessary to give effect to an arbitration agreement"). A partial stay of plaintiff's complaint is entirely appropriate where the interpretation of the arbitration charge compels the conclusion some of the issues are nonarbitrable. *See Fuller, supra,* 565 F.2d at 260–61 (affirming district court's stay of breach of contract claim and retention of tort claim).

**Conclusion**

Defendant's motion to stay judicial proceedings in this action is granted with respect to plaintiff's first seven claims and denied with respect to plaintiff's final claim.

IT IS SO ORDERED.