DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LINDA DEWEES,**
Appellant,

v.

**DON ALLEN JOHNSON, GL BUILDING CORPORATION, BOYNTON BEACH ASSOCIATES XXII, LLLP,** and **BOYNTON BEACH XXII CORPORATION,**
Appellees.

No. 4D21-446

[November 3, 2021]

Appeal of nonfinal orders from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie Rowe, Judge; L.T. Case No. 50-2020-CA-004912-XXXX-MB.

Philip M. Burlington and Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach, and Howard S. Grossman and Callie J. Fixelle of Grossman Attorneys at Law, Boca Raton, for appellant.

Elliot B. Kula and William D. Mueller of Kula & Associates, P.A., Miami, and Eric J. Neuman of Neuman Law, P.A., Boca Raton, for appellees.

PER CURIAM.

Linda Dewees appeals a nonfinal order compelling arbitration of her negligence and breach of duty claims and staying litigation of those claims in an action she brought against a real estate developer. Because these claims do not implicate contractual duties created or governed by the contract but concern duties generally owed to the public, we conclude that a significant relationship does not exist between the claims and the agreement containing the arbitration clause. Accordingly, we reverse.

### *Factual and Procedural Background*

Dewees purchased a home in a private residential community named Valencia Bay from the developer pursuant to a Purchase Contract, which contained the following provision regarding dispute resolution procedures:

22. Dispute Resolution Procedures.  Please read this section carefully, as it greatly impacts purchaser's rights in the event of a dispute with seller.  This contract provides that all <u>post-closing</u> claims, disputes, and controversies (hereinafter collectively "claims") between purchaser and seller will be resolved by binding arbitration <u>except</u> those arising under sections G.5 and G.6 above.  A claim is considered to have arisen post-closing if it is asserted after purchaser closes on the sale of the home, even if the claim is based upon events that may have occurred pre-closing (e.g., the construction of the residence, or statements made during the sales process).

Where claims are subject to binding arbitration, purchaser and seller give up their rights to go to court and resolve the claim.  In that regard, purchaser and seller hereby mutually, knowingly and voluntarily agree that, except with respect to claims arising pursuant to sections G.5 and G.6 above[1], any and all claims by or between purchaser and seller which occur post-closing, even those based upon a theory not recognized at the time this agreement is executed, shall be submitted to binding arbitration for resolution, such claims include, without limitation, claims that arise from or in connection with, or relate to: (A) this contract or any document executed, or contemplated to be executed, in conjunction with this

---

[1] Sections G.5 and G.6 provide:

5.  Sales Interference.  Purchaser agrees not to interfere in any manner whatsoever, directly or indirectly, in the sales process . . . with other purchasers or prospective purchasers whether in, near or around or in the vicinity of the Community or any other community owned or developed by Seller or any of its affiliates, or elsewhere. . . .

6.  Construction Interference.  Purchaser agrees that all matters pertaining to construction will be discussed by Purchaser only at the office of Seller.  Purchaser agrees that Purchaser and Purchaser's agents and representatives shall not in any way interfere with workmen during the construction of the Home or the completion of the work specified in the inspection List and/or in the performance of any work pursuant to the Dwelling Warranty or otherwise.  Purchaser further agrees that Purchaser and Purchaser's agents and representatives shall not visit the construction site without Seller's prior written consent, which Seller may grant or deny in Seller's sole discretion . . . .

contract; (B) the transaction contemplated by this contract; (C) the home, its design, or its construction; (D) the real property on which the home is situated; (E) the sale of the home; (F) any course of conduct, course of dealing, or statements (verbal or written) of the parties to the claim; (G) any actions or inactions of the parties to the claim; or (H) any disputes concerning the interpretation or enforceability of the dispute resolution proceedings set forth in this section, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches. This provision shall apply to all post-closing claims (except those claims arising pursuant to sections G.5 and G.6 above) regardless of the legal theory alleged (including, without limitation, breach of contract, tort, violation of statute, code, rule or regulation, or breach of any implied covenant or duty), the type of injury alleged (including, without limitation, monetary, property damage, personal injury, emotional injury, or death) the type of relief sought (legal or equitable) or the type or amount of damages sought (compensatory, punitive, consequential, special, incidental, or otherwise). Arbitration of such claims shall be conducted . . . in accordance with the rules of the applicable arbitration service in effect at the time that the arbitration is initiated, as well as the Federal Arbitration Act . . . and the terms of the dwelling warranty . . . . In the event of any conflict, the terms of the dwelling warranty shall govern. . . .

The Dwelling Warranty, contained in Section H.22 of the Purchase Contract, provides a one-year workmanship and two-year systems defect warranty and a structural defect warranty:

SECTION VI. ARBITRATION OF DISPUTES.*
To expedite the resolution of any and all claims, disputes and controversies by or between the Homeowner, the Builder/Seller, 2-10 HBW, as administrator, the Warranty Insurer or any combination of the foregoing, arising from or related to this Warranty, the Warranty Insurance Policy or the 2-10 HBW Program, Claims shall be settled by binding arbitration. . . .

Eighteen months after entering into the Purchase Contract, Dewees suffered injuries while riding her bicycle through the Valencia Bay community to visit its warranty office. The roadways through the

community were under construction by the developer and missing asphalt needed to level the pavement and concrete gutter portions with one another, causing an elevation change. This uneven road caused the front tire on Dewees's bicycle to hit the roadway lip. She lost control, fell off her bicycle, and sustained injuries.

After the incident, Dewees filed an eleven-count complaint against the developer, GL Building Corporation (the company hired to construct the road), Don Johnson (the general contractor), and Boynton Beach XXII Corporation. The complaint contained three counts against the developer:

1. Negligence for failing to ensure all travel lanes were safe for pedestrians and bicyclists to utilize; to ensure the design, engineering, construction, supervision, and/or inspection of the incomplete roadway was in accordance with design standards and did not result in abrupt elevation changes; to implement standards which reduced the height of the vertical pavement edges on or near roadway surfaces that were open to bicyclists; to install and maintain traffic control and safety during the incomplete construction; to maintain existing or detour facilities; and to exercise reasonable care under all circumstances;

2. Negligence for failing to warn pedestrians and bicyclists using the incomplete roadway of known and inherent hazards; and

3. Breach of its nondelegable duty to maintain the premises in a safe and reasonable manner for invitees.

The developer moved for arbitration and to stay litigation based upon the terms of the Purchase Contract and Dwelling Warranty. The developer claimed that each of the claims against it fell under the arbitration provision of the Purchase Contract because the purpose of Dewees's presence and related fall was to visit the warranty office to report a claim under the Dwelling Warranty. Thus, the developer argued that Dewees's claims arose from, are in connection with, or relate to the Purchase Contract and Dwelling Agreement, the obligations of the developer as part of the transaction contemplated by the Purchase Contract, the process for constructing and warrantying the home, and the process under the Purchase Contract for the sale of the home. Dewees responded that the arbitration provision contained in the Purchase Contract applied only to disputes related to the purchase and sale of her home, not tort claims

4

stemming from injuries suffered by her on the developer's property eighteen months after the purchase.

The trial court held a hearing on the motion to compel arbitration. After, the trial court entered an order granting the developer's motion to compel arbitration and staying the case. Dewees moved for rehearing, or alternatively, clarification. The trial court entered an order clarifying that its initial order granted the motion to compel arbitration and stay as to the developer only, not the other defendants named in the complaint.

This appeal follows.

### Analysis

"An order granting or denying a motion to compel arbitration is reviewed *de novo*" when it presents a pure question of law. *DFC Homes of Fla. v. Lawrence*, 8 So. 3d 1281, 1282 (Fla. 4th DCA 2009). "[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). Element two is at issue here.

Determining whether an arbitrable issue exists requires the court to examine the plain language of the parties' arbitration agreement. *See Lake City Fire & Rescue Ass'n, Local 2288 v. City of Lake City*, 240 So. 3d 128, 130 (Fla. 1st DCA 2018). "Contracts with arbitration clauses create a presumption of arbitrability." *Robertson Grp., P.A. v. Robertson*, 67 So. 3d 1112, 1114 (Fla. 1st DCA 2011). "Any doubt in the scope of an arbitration agreement should be resolved in favor of arbitration." *Id.*

Here, the arbitration provisions included in the Purchase Contract provide that "all <u>post-closing</u> claims, disputes, and controversies . . . between purchaser and seller will be resolved by binding arbitration <u>except</u> those arising under sections G.5 and G.6 above," and:

> <u>any and all claims by or between purchaser and seller which occur post-closing</u>, even those based upon a theory not recognized at the time this agreement is executed, <u>shall be submitted to binding arbitration for resolution, such claims include, without limitation</u>, claims that arise from or in connection with, or relate to: (A) this contract or any document executed, or contemplated to be executed, in conjunction with this contract; (B) the transaction contemplated by this contract; (C) the home, its design, or its

5

construction; (D) the real property on which the home is situated; (E) the sale of the home; (F) any course of conduct, course of dealing, or statements (verbal or written) of the parties to the claim; (G) any actions or inactions of the parties to the claim; or (H) any disputes concerning the interpretation or enforceability of the dispute resolution proceeding set forth in this section, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches. <u>This provision shall apply to all post-closing claims</u> (except those claims pursuant to sections G.5 and G.6 above) regardless of the legal theory alleged (including, without limitation, breach of contract, tort, violation of statute, code, rule or regulation, or breach of any implied covenant or duty), the type of injury alleged (including, without limitation, monetary, property damage, personal injury, emotional injury, or death) the type of relief sought (legal or equitable) or the type or amount of damages sought (compensatory, punitive, consequential, special, incidental, or otherwise).

(emphasis added).

Thus, the arbitration provision in this case includes broad arbitration language. "Deciding whether a particular claim is covered by a broad arbitration provision requires a determination of whether a significant relationship exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute." *King Motor Co. of Fort Lauderdale v. Jones*, 901 So. 2d 1017, 1019 (Fla. 4th DCA 2005) (citing *Seifert*, 750 So. 2d at 637-38). "[A] significant relationship is described to exist between an arbitration provision and a claim if there is a 'contractual nexus' between the claim and the contract." *Baker v. Econ. Rsch. Servs., Inc.*, 242 So. 3d 450, 455 (Fla. 1st DCA 2018) (quoting *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013)).

"A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Id.* (quoting *Jackson*, 108 So. 3d at 593); *see also Seifert*, 750 So. 2d at 638. "More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship." *Jackson*, 108 So. 3d at 593. "In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public

6

policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public." *Id.*

Here, because the Purchase Contract includes an arbitration provision containing broad arbitration language, the claims subject to arbitration are not only those that arise out of the Purchase Contract but also those with a significant relationship to the Purchase Contract. Dewees's argument that her claims do not have a significant relationship with the Purchase Contract primarily relies on *Seifert.*

In *Seifert,* the plaintiff brought a wrongful death action against her house builder after she and her husband contracted with the builder to construct a new house and the husband died after leaving his car running in the garage. 750 So. 2d at 635. Their air conditioning system, which was located in the garage, picked up the carbon monoxide emissions from the husband's car and distributed the emissions throughout the house, causing his death. *Id.* The plaintiff, as personal representative of her husband's estate, sued the builder for negligence, among other claims. *Id.* The builder moved to compel arbitration on the negligence claims, arguing that they were within the scope of the arbitration provision contained in the purchase contract, which provided for arbitration of "[a]ny controversy or claim arising under or related to this Agreement or to the Property." *Id.*

The Fifth District held that the issue was arbitrable because the claims arose under or related to the contract for construction of the home. *U.S. Home Corp. v. Seifert,* 699 So. 2d 787 (Fla. 5th DCA 1997). However, the Florida Supreme Court quashed the decision, recognizing that "even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Seifert,* 750 So. 2d at 638. The supreme court disagreed that an arbitration provision in a purchase and sale agreement necessarily requires "arbitration of a subsequent and independent tort action based upon common law duties." *Id.* at 635. "[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." *Id.* at 638. For a dispute to be related to the subject matter of a contract, and thus subject to arbitration, "it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself." *Id.* at 639 (citation omitted). After reviewing case law from Florida and other jurisdictions, the supreme court adopted our reasoning in *Terminix International Co. v. Michaels,* 668 So. 2d 1013 (Fla. 4th DCA 1996).

In *Terminix*, we relied upon and adopted the Arizona Court of Appeal's holding in *Dusold v. Porta–John Corp.*, 807 P.2d 526 (Ariz. Ct. App. 1990):

> [T]he better-reasoned cases start with the premise that, in order for the dispute to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration, it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself. *Id.* [*Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union No. 584*, 359 F.2d 598 (2d Cir. 1966)]. The relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties. *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566 (11th Cir. 1984). *See also McMahon v. RMS Electronics, Inc.*, 618 F. Supp. 189 (S.D.N.Y. 1985) (where tort claim does not require an interpretation of the underlying contract, no arbitration of that claim is required); *Popper* [*v. Monroe*], 673 F. Supp. [1228] at 1228 [S.D.N.Y. 1987] (if defamatory statements have no material relationship to contractual relationship, no arbitration required). If such a connection to the contract is not present, tort claims between the parties could not reasonably be intended to have been subject to arbitration within the meaning of an arbitration clause requiring this method of resolution only for claims "arising out of or related to" the contract.
>
> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. *Barmat* [*v. John and Jane Doe Partners A–D*], 155 Ariz. [519] at 523, 747 P.2d [1218] at 1222 [1989]. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. *If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. Id.* Therefore, a contractually-imposed arbitration requirement . . . would not apply to such a claim.

*Terminix Int'l Co.*, 668 So. 2d 1014-15 (quoting *Dusold*, 807 P.2d at 530-31) (emphasis added) (alterations in original).

Applying those principles, we agree with Dewees that there is no significant relationship between her claims against the developer and the Purchase Contract. This case involves tort claims based on the developer's alleged breach of its nondelegable duty to maintain its premises in a safe and reasonable manner for invitees and its duty to warn pedestrians and bicyclists using the incomplete roadways of unknown and inherent hazards of which the developer was and/or should have been and/or become aware.

The claims do not refer to or implicate contractual duties created or governed by the Purchase Contract or Dwelling Warranty but concern duties generally owed to the public, including all invitees using the roadways in Valencia Bay. None of the allegations in the complaint require reference to or construction of any portion of the Purchase Contract or Dwelling Warranty. The allegations instead rely on obligations that would extend to anyone who might be injured by the developer's tortious conduct.

Unlike in *Seifert*, however, the Purchase Contract does contemplate personal injury claims. *See Seifert*, 750 So. 2d at 641 ("[T]he only reference to casualties relates solely to damages to the property itself and not to personal injuries suffered by either party as a consequence of the tortious conduct of the other."). Here, the arbitration provision provides that the parties agree all post-closing claims "regardless of the legal theory alleged (including, without limitation, . . . personal injury)" are subject to arbitration.

Despite the arbitration provision in this case being broad and specifically including personal injury claims, there is nevertheless no nexus between the dispute and Purchase Contract such that it would be fair to presume this type of dispute—Dewees falling off her bicycle in the community in which she bought her home due to the developer's negligence and breach of duty owed to all pedestrians and bicyclists using that route—was intended to be subject to the arbitration provision contained in the Purchase Contract.

Because Dewees's negligence and breach of duty claims have no significant relationship with the Purchase Contract containing the arbitration provision, the claims are not subject to arbitration. We reverse and remand for proceedings consistent with this opinion.

*Reversed and remanded for further proceedings.*

LEVINE, KLINGENSMITH and KUNTZ, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***