ROBERT L. CAUDLE *et al.*, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellees, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.

Fifth District   No. 5—93—0071

Opinion filed June 4, 1993.—Rehearing denied July 2, 1993.

Arnstein & Lehr, of Chicago (Michael A. Stiegel, Arthur L. Klein, and Hal R. Morris, of counsel), and Campbell, Black, Carnine & Hedin, of Mt. Vernon (Terry R. Black and Jerome E. McDonald, of counsel), for appellant.

Law Offices of Morris Lane Harvey, of Fairfield (Morris Lane Harvey and Michael J. Molt, of counsel), and Christopher & Taylor (Rodney V. Taylor, of counsel), and Lowe, Gray, Steele & Hoffman (Sydney Steele, of counsel), both of Indianapolis, Indiana, for appellees.

JUSTICE MAAG delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)) from an order of the circuit court of Wayne County which denied Sears' motion to compel arbitration and to stay all judicial proceedings pending arbitration. For the reasons set forth below, the circuit court should be reversed.

The relevant facts are as follows: Defendant-appellant, Sears, Roebuck & Co. (hereinafter Sears), decided not to renew separate operating contracts with operators of Sears catalog centers who are from several different States. On September 28, 1992, a class action complaint was filed on behalf of 2,600 owners of catalog centers as of August 1, 1992, and those who had invested in such centers as of August 1, 1992. The complaint that plaintiffs-appellees, Robert L. Caudle *et al.*, filed charged Sears with breach of express and implied contracts with respect to its corporate decision to withdraw from the catalog-sales market by not renewing operating contracts with the plaintiffs. The complaint sought consequential and incidental damages. Sears subsequently filed a motion to stay the action in circuit court and to compel arbitration pursuant to a provision in the "Catalog Sales Merchant Agreement" (hereinafter Merchant Agreement) with plaintiffs which called for mandatory arbitration of all disputes between the parties.

Sears contends that all of the claims which were raised in the class action complaint should be submitted to arbitration because the Merchant Agreement contains an arbitration clause. Plaintiffs claim, however, that their action is grounded upon a separate agreement, an oral investment contract. Thus, plaintiffs argue that the investment contract is not subject to the arbitration clause in the Merchant Agreement because the investment contract is a separate oral promise by Sears not to cause catalog-center owners and investors to lose their investments without adequate compensation. The trial court denied Sears' motion to stay proceedings pending arbitration on February 1, 1993. On February 3, 1993, Sears filed a notice of interlocutory appeal from that ruling. This court granted Sears' request to expedite the appeal on February 11, 1993. On March 2, 1993, this court granted Sears' motion to stay further trial proceedings pending appeal. Plaintiffs then filed a motion to dismiss Sears' interlocutory appeal, and on March 15, 1993, this court denied plaintiffs' motion. Thereafter, on April 1, 1993, Sears filed a motion for approval of settlement and dismissal of claims or, alternatively, partial vacation of stay of trial court proceedings due to the fact that all of the named plaintiffs except one, Robert Caudle, had settled their claims with Sears. This court's stay of the trial court's proceedings, entered March 2, 1993, is partially vacated for the purpose of permitting the trial court to approve, pursuant to section 2—806 of the Civil Practice Law (735 ILCS 5/2—806 (West 1992)), the close-down payment agreements of Debrah K. Myaard, Joseph Tanecka, Sheryl Paul, and Alan Waltenberger and to dismiss their claims with prejudice.

■ Initially, we note that the plaintiffs are again contesting the jurisdiction of this court for precisely the same reasons as they did in their motion to dismiss Sears' interlocutory appeal. We have already determined that plaintiffs' argument is without merit, and we will continue to adhere to our previous position. In the memorandum in support of plaintiffs' motion to dismiss Sears' interlocutory appeal, plaintiffs claimed that the denial of the motion to stay is really akin to the denial of a motion to dismiss their complaint and, hence, is not appealable by right under Supreme Court Rule 307(a)(1). Plaintiffs assert that Sears is, in effect, seeking a dismissal of plaintiffs' action. Under this procedural posture, the order denying relief would not be appealable. (See *In re Marriage of Wass* (1981), 94 Ill. App. 3d 436, 419 N.E.2d 32.) According to plaintiffs, relief on Sears' motion to stay and compel arbitration would have been tantamount to a dismissal of the action. As a consequence, they regard the denial of the motion as synonymous with the denial of a motion to dismiss. The interpretation plaintiffs assign to the Sears' motion, however, is predicated on the assumption that there is no claim in their complaint that is subject to arbitration under the Merchant Agreement. This begs the question which is before this court on appeal. In *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268, 456 N.E.2d 93, the Illinois Supreme Court determined that orders denying motions to stay trial court proceedings and to compel arbitration are appealable by right under Supreme Court Rule 307(a)(1). Therefore, we believe that under *Notaro*, this court has jurisdiction where both the form and substance of the interlocutory order suggest that it is appealable under Supreme Court Rule 307(a)(1).

Controverted facts or the merits of the case are not decided where, as here, an interlocutory appeal is brought pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). (See *Yates v. Doctor's Associates, Inc.* (1990), 193 Ill. App. 3d 431, 437, 549 N.E.2d 1010, 1014.) In fact, the only issue in such an appeal is "whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought." (*Yates*, 193 Ill. App. 3d at 437, 549 N.E.2d at 1014.) To determine whether the circuit court acted properly in denying Sears' motions, we must address what law governs the agreement between the parties. See *Yates*, 193 Ill. App. 3d at 437, 549 N.E.2d at 1014.

Sears has suggested in its brief that the Merchant Agreement should be governed by the Uniform Arbitration Act (Ill. Rev. Stat. 1991, ch. 10, pars. 101 through 123); therefore, Sears claims that the question of arbitrability should have been submitted to an arbitrator

instead of the court deciding the issue itself. Plaintiffs respond that the Federal Arbitration Act (9 U.S.C.A. §§1 through 16 (West 1970 & Supp. 1993)) applies to this case because the written agreements are contracts evidencing a transaction in interstate commerce which contain arbitration provisions. Since the Federal Arbitration Act creates Federal substantive law with regard to any arbitration agreement within the Act's coverage, plaintiffs believe that State law has been preempted; therefore, all questions must be determined according to Federal law. (See *Yates*, 193 Ill. App. 3d at 437-38, 549 N.E.2d at 1014.) This point is significant because if the Federal Arbitration Act applies, the court itself is to decide whether an issue is arbitrable. (See *A T & T Technologies, Inc. v. Communications Workers of America* (1986), 475 U.S. 643, 651, 89 L. Ed. 2d 648, 657, 106 S. Ct. 1415, 1420; *Virginia Carolina Tools, Inc. v. International Tool Supply, Inc.* (4th Cir. 1993), 984 F.2d 113, 117, *cert. denied* (1993), ___ U.S. ___, 124 L. Ed. 2d 681, 113 S. Ct. 2930.) If the Uniform Arbitration Act applies, there are areas where arbitrability may appropriately be determined by the court and there are areas where the court, on the question of arbitrability, must defer to the arbitrator. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 444, 530 N.E.2d 439, 443.) According to the Uniform Act, if the language of the arbitration agreement is clear and it is obvious that the dispute desired to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitration issue and compel arbitration. (*Donaldson*, 124 Ill. 2d at 445, 530 N.E.2d at 443.) Likewise, if it is obvious that the issue sought to be arbitrated is not within the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because no agreement to arbitrate exists. (*Donaldson*, 124 Ill. 2d at 445, 530 N.E.2d at 443.) Moreover, when the parties broadly agree to arbitrate and it is still unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator. *Donaldson*, 124 Ill. 2d at 447-48, 530 N.E.2d at 445.

Sears based its "Motion to Compel Arbitration and Stay the Judicial Proceedings" upon the Federal Arbitration Act as well as the Uniform Arbitration Act. Sears admitted, however, in the motion to compel arbitration that "[e]ach contract involves commerce as defined by [the Federal Arbitration Act]."

■ The relevant text of the Federal Arbitration Act is as follows:
"A written provision in *** a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy

thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) (9 U.S.C.A. §2 (West 1970).)

If a contract "involves commerce," the question of arbitrability is governed by Federal law. (See *Bayma v. Smith Barney, Harris Upham & Co.* (9th Cir. 1986), 784 F.2d 1023, 1025.) The trial court in the case at bar determined that this case is governed by the Federal Arbitration Act. We agree. The contract in the instant case "involves commerce." Even Sears agreed in its motion to compel arbitration that the contract involves commerce; therefore, the Federal Arbitration Act controls this case. As previously stated, according to the Federal Arbitration Act, the issue of arbitrability is to be determined by the court rather than the arbitrator; hence, the trial court's decision to determine the issue of arbitrability was appropriate.

This determination does not end our inquiry, however, because we must review the trial court's decision and decide if there was a sufficient showing to support the trial court's refusal to compel arbitration or stay the judicial proceedings. See *Yates*, 193 Ill. App. 3d at 440, 549 N.E.2d at 1016.

Sears claims that the plain language of the Merchant Agreements which the plaintiffs signed mandates arbitration. Plaintiffs respond that the subject matter of the Merchant Agreements does not encompass the subject matter of the alleged oral investment contract; therefore, the arbitration clause encompassed within the Merchant Agreements does not apply to plaintiffs' claims. More specifically, plaintiffs claim in their complaint that the alleged oral investment contract included the following representations by Sears:

"5. Sears made an express[ ] or implied contract with each plaintiff and Class member, in consideration of their participation in Sears' national catalog sales distribution system and/or their investment in a Sears catalog sales business enterprise, including an express[ ] or implied promise by Sears that it will not, without adequate compensation:

a) Do or fail to do anything that will harm, diminish or hinder their investment or their ability to get back or recoup their investment in their Sears catalog sales business enterprise, or

b) Confiscate, assume or otherwise appropriate their investment in their Sears catalog business enterprise.

6. The investment of the plaintiffs and each Class member in their Sears catalog sales business enterprise, made with the encouragement and support of Sears, included, without limitation, funds paid or obligations incurred to prior owners, for real and personal property, leasehold interests, personal time and devotion to the enterprise, forfeiture of assets and opportunities and/or other payments and commitments made to enhance their Sears catalog sales business enterprise.

7. In August, 1992, and thereafter, Sears, without adequate compensation, threatened and/or refused to renew upon substantially the same terms the separate operating contract between Sears and each plaintiff and Class member.

8. This conduct and refusal of Sears in August, 1992, and thereafter, to renew the separate operating contracts of plaintiffs and the Class upon substantially the same terms, without adequate compensation,

a) Harmed, diminished and hindered the investment and ability of each plaintiff and Class member to get back or recoup their investment in their Sears catalog sales business enterprise, and

b) Confiscated, assumed and appropriated their investment in their Sears catalog sales business enterprise.

9. Sears breached its express[ ] or implied contracts made with the plaintiffs and Class, causing them damage and losses."

Additionally, plaintiffs claim in their amended complaint that the alleged oral investment contract includes the following representations by Sears:

"5. Sears orally represented by express[ ] words and a common plan and course of conduct, intended to and did induce investment in the Catalog Sales Distribution System.

6. Sears' common plan and course of conduct to induce investment in the Catalog Sales Distribution System included, without limitation, direct solicitation and encouragement of investment, advertisements and newspapers, counseling or advising about appropriateness of investment amounts, facilitating the sale and purchase of an investment, and representations directly and indirectly that an Investor could sell his or her investment in Catalog Sales Distribution System.

7. Sears, by its express[ ] words or its common plan and course of conduct promised each Investor that he or she could

sell his or her investment in the Catalog Sales Distribution System, and communicated its intention to that Investor that Sears would be bound by its promise."

Because this agreement falls within the ambit of the Federal Arbitration Act, Federal law applies in construing and enforcing the arbitration clause, even in those cases in which jurisdiction is based on diversity. (*Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.* (5th Cir. 1980), 625 F.2d 22.) In determining the scope of the arbitration agreement, the court must apply the " 'federal substantive law of arbitrability.' " (*McPheeters v. McGinn, Smith & Co.* (2d Cir. 1992), 953 F.2d 771, 772, quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985), 473 U.S. 614, 626, 87 L. Ed. 2d 444, 455, 105 S. Ct. 3346, 3352.) The court must take into account, however, that questions of arbitrability must be addressed with a healthy regard for the, Federal policy favoring arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983), 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941.

Therefore, it is necessary to review the arbitration clause which is found within the Merchant Agreement in order to determine whether the alleged oral investment contract should be submitted to arbitration. The relevant portion of the arbitration clause is as follows:

> "*Any controversy or claims arising out of or relating to this Agreement,* or any breach thereof, including, without limitation, any claim that this Agreement or any portion thereof is invalid, illegal, or otherwise voidable, *shall be submitted to arbitration* before and in accordance with the rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction thereof. Provided, however, that this clause shall not limit Sears['] right to obtain any provisional remedy, including, without limitation, injunctive relief, writs for recovery of possession or similar relief, from any court of competent jurisdiction, as may be necessary in Sears['] sole subjective judgment, to protect its trademark or other property rights." (Emphasis added.)

■ The question of arbitrability is settled on the basis of the existence of an arbitration clause that, on its face, appears broad enough in scope to encompass the parties' claims. (*Commerce Park at D F W Freeport v. Mardian Construction Co.* (5th Cir. 1984), 729

F.2d 334, 338-39.) We believe that the language of the arbitration agreement in the instant case is about as broad as one can conceive. Therefore, we believe that it is clear that the language in the arbitration clause, on its face, is broad enough to cover the claims in the case at bar. Even if the arbitration clause had been fairly debatable or reasonably in doubt, the court should have decided the question of construction in favor of arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 583, 4 L. Ed. 2d 1409, 1418, 80 S. Ct. 1347, 1353.

We note, however, that the intention of the parties must be determined from the entire agreement because one cannot be required to submit a dispute to arbitration if he has not agreed to do so. (*Georgia Power Co. v. Cimarron Coal Corp.* (6th Cir. 1975), 526 F.2d 101, 106.) Therefore, we will review the Merchant Agreement in order to determine whether the current dispute regarding the alleged oral investment contract is so intertwined with the Merchant Agreement that it must be submitted to arbitration.

In section 5 of the Merchant Agreement, the term of the contract is specifically limited to two years and contains a provision for nonrenewal. That section states:

> "Either party may refuse to extend or renew this or any similar subsequent agreement without cause or obligation. Successive renewals or statements or actions indicating expectations of a continuing relationship shall not be construed as a waiver of this right to not renew nor to prevent either party from exercising such right and neither party shall have any expectations of a continuing indefinite term of this Agreement or the relationship established by this Agreement. Any reason giv[en] for the desire to not renew shall not affect the validity of the notice of non-renewal."

Furthermore, section 15 contains an integration clause which states as follows:

> "This Agreement constitutes the entire and complete agreement between the parties concerning the subject matter of this Agreement and supersedes all prior agreements. *There are no representations, inducements, promises, or agreements, oral or otherwise, among the parties not embodied in this agreement* which are of any force or effect with reference to this Agreement or otherwise. No amendment, change, or variance from this Agreement shall be binding on any party unless executed in writing ***. No field representative of Sears has the right or authority to make any oral or written amendment or modifica-

tion to the Agreement, and any purported amendment or modification made by such field representative shall not be binding upon the parties hereto. *Merchant acknowledges that no representation other than contained herein has induced Merchant to execute this agreement.*" (Emphasis added.)

Therefore, even though plaintiffs claim that the alleged oral investment contract contains a different subject matter than the Merchant Agreement, it is clear that the Merchant Agreement contains the very information that plaintiffs claim that it does not. For example, in the amended complaint for damages, the plaintiffs claim that they incurred damages under the alleged oral investment contract because Sears "destroyed the Catalog Sales Distribution System, the underlying basis for the Investors' investment[,] by terminating said system as it had theretofore existed, thereby denying to the Investors the ability to sell their investment." In fact, this allegation summarizes the plaintiffs' underlying theme regarding the substance of the alleged oral investment contract. Plaintiffs fail to acknowledge, however, that each Merchant Agreement specifically states that the merchant's relationship with Sears is based upon a mere two-year term which Sears has continued to renew until the present time even though Sears apparently had no obligation to do so. The Merchant Agreement also contains a nonrenewal provision. Plaintiffs appear to be claiming, however, that such a provision does not exist. Additionally, the integration clause specifically states that there are no oral promises other than those contained within the Merchant Agreement and that the merchant acknowledges that no representations other than those contained within the Merchant Agreement has induced the merchant to enter into the Merchant Agreement. Therefore, we believe that a review of the entire agreement between the parties indicates that the parties intended to submit this type of dispute to arbitration because it is clear that the aforementioned provisions in the Merchant Agreement specifically cover the very issues of which plaintiffs are complaining.

Hence, we believe that the alleged oral investment contract is so closely related to and inextricably intertwined with the Merchant Agreement that this dispute must be submitted to arbitration. Therefore, we believe that the trial court erred in refusing Sears' motion to compel arbitration. Since arbitration of this dispute was required in accordance with the Merchant Agreement, it necessarily follows that the trial court erred in refusing to stay the pending action.

For the foregoing reasons, we reverse the order of the circuit court of Wayne County denying Sears' motion to compel arbitration and stay the judicial proceedings.

Reversed and remanded.

CHAPMAN, P.J., and WELCH, J., concur.