Wayne GREENWOOD and Vicki
Greenwood, Plaintiffs–
Respondents,

v.

Wayne SHERFIELD and Sears, Roebuck
and Company, Defendants–
Appellants.

No. 19458.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 8, 1995.

Motion for Rehearing or Transfer
Denied March 3, 1995.

Application to Transfer Denied
April 25, 1995.

Dan L. Birdsong, Thomas, Birdsong & Clayton, Rolla, Paul E. Starkman, Arnstein & Lehr, Chicago, IL, for defendants-appellants.

David L. Steelman, Bryan D. Scheiderer, Steelman & Gaunt, Rolla, for plaintiffs-respondents.

SHRUM, Chief Judge.

This appeal presents the question of whether Plaintiffs' claim against Defendants for tortious interference with contract must be resolved by arbitration. The trial court answered the question negatively and over-ruled Defendants' motion to compel arbitration.[1] Defendants appeal from that order. We affirm.

## FACTS

Plaintiffs operated a Sears catalog store in Mexico, Missouri. They were independent merchants distributing catalog merchandise pursuant to a Sears Authorized Catalog Sales Agreement (the "Merchant Contract"), a contract between Plaintiffs and Sears. Such agreements normally had a two-year term[2] and contained an arbitration clause which provided that "[a]ny controversy or claims arising out of or relating to this Agreement ... shall be submitted to arbitration."[3] Under the contract, Sears had both a right of first refusal if the merchant opted to sell, and the right to approve the prospective buyer if Sears did not exercise their right of first refusal.

In February 1992, Plaintiffs contracted to sell their business to David and Cindy Isaacson. In this contract (herein the "Isaacson Contract") was a provision that the proposed sale was contingent on the Isaacsons being approved by Sears as an authorized merchant.

With the Isaacson Contract signed, Plaintiffs notified Sherfield, district manager for Sears, of the existence of the contract. On April 6, 1992, Sears waived its right of first refusal for the sale of the business operated by Plaintiffs and allowed them to proceed with the sale. On April 23, 1992, Sherfield contacted the Isaacsons and told them that "he was morally obligated to tell [them] that there would be a dramatic change in the new merchant contracts." Sherfield's statement to the Isaacsons caused them to terminate the contract for the sale of Plaintiffs' business.

Plaintiffs then sued Sherfield and Sears for actual and punitive damages on the theory that Sherfield had maliciously and tortiously procured the breach of the Isaacson Contract. Their claim against Sears was grounded in respondeat superior principles and allegations..

Defendants filed a "Motion to Stay Proceedings and Compel Arbitration," alleging that Plaintiffs' tort claim against them should be subject to arbitration because of the arbitration provision of the Sears contract. The trial court found that "the cause of action set forth in Plaintiffs['] petition arises out of circumstances separate and apart from the merchant agreement" and overruled the motion. This appeal followed.

"[e]ven though [Sears] Agreements had a set term (2 yrs.), they were commonly renewed absent extraordinary circumstances. Accordingly, a secondary market had developed in which catalog merchants could sell their interests in their catalog store to third parties." From the meager record before us, it appears that as of February 1992, the term of the Merchant Contract then in existence would have been May 1, 1990, to April 30, 1992.

---

1. When we refer to Wayne Sherfield individually we use his last name. Sears, Roebuck and Co. we refer to as "Sears." Collectively we refer to Sherfield and Sears as "Defendants."

2. Apparently the term of the Merchant Contract at issue was May 1, 1990, to April 30, 1992. We say "apparently" because Defendants have not filed a copy of any Merchant Contract as part of the record on appeal. Defendants' Motion to Compel Arbitration and supporting memorandum recite that a copy of the contract was attached, but it was not. Our efforts to supplement the record via contact with the Phelps County Circuit Clerk revealed that the Merchant Contract was not attached to the original pleadings on file in that office. The only copy of a merchant contract before this court is one attached by Plaintiffs to their Motion to Dismiss Appeal. The term of that contract was May 1, 1992, to April 30, 1994. In a footnote in their brief—without evidentiary support but without objection from Plaintiffs—Defendants say that

3. Despite the absence of the original Merchant Contract from the record on appeal, both parties quote this language in their respective briefs as being the arbitration clause at issue. "Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record." *Thornbury v. Morris Oil Co., Inc.*, 846 S.W.2d 238, 239 n. 2 (Mo.App.1993) (citing *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo. 1956)).

## MOTION TO DISMISS APPEAL

By a separate motion to dismiss, Plaintiffs contend we lack jurisdiction to hear this appeal.

Plaintiffs' first argument in this regard is that because Defendants brought their Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* 1988 (FAA), and their Notice of Appeal cited the Missouri's Uniform Arbitration Act, § 435.440.1(1), RSMo 1986, we do not have jurisdiction. Without citation to authority, Plaintiffs insist that as Defendants' Motion to Stay Action and Compel Arbitration was not based on § 435.355, RSMo 1986, they may not appeal pursuant to § 435.440.1(1).[4] We disagree.

■■■ If Plaintiffs' claim is arbitrable at all, it appears that it would be pursuant to the Federal Arbitration Act. This because Defendants assert—and Plaintiffs do not affirmatively dispute—that the Merchant Contract is a part of Sears's system of distributing general catalog merchandise and is a contract "evidencing a transaction involving commerce" within the scope of the Federal Arbitration Act.[5] When arbitration is pursuant to the federal act but enforcement is sought in a Missouri court, the substantive law of the Federal Arbitration Act, 9 U.S.C. § 2, is to be given effect. *McClellan v. Barrath Construction Co., Inc.,* 725 S.W.2d 656, 658 (Mo.App.1987). However, "the procedural provisions of the Federal Arbitration Act are not binding on state courts ...; provided applicable state procedures do not defeat the [substantive] rights granted by Congress." *Id. See Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839[3, 4] (Mo. banc 1985).

■■■ Accordingly, we may look to Missouri law to determine whether a litigant may appeal a trial court's order on an arbitration issue, provided we do nothing to thwart the substantive rights granted in the federal act. *McClellan,* 725 S.W.2d at 659 n. 7. The order being reviewed denied a motion to compel arbitration and is among the various orders designated as appealable, both under 9 U.S.C. § 16 and § 435.440.1(1), RSMo 1986. *Brookfield R–III School District v. Tognascioli Gross Jarvis Kautz Architects, Inc.,* 845 S.W.2d 103, 104 (Mo.App. 1993).

■■■ Missouri Rules of Civil Procedure 81.08(a) mandates a notice of appeal and that it "specify ... the judgment or order appealed from." Defendants' notice of appeal complied with that rule. It specified clearly that the appeal was from the "Order ... denying [Defendants'] Motion to Stay Action and Compel Arbitration." The formal allegations in a notice of appeal are to be liberally construed to permit appellate review so long as the opposing party has not been misled to his irreparable harm. *Allison v. Sverdrup & Parcel and Associates, Inc.,* 738 S.W.2d 440, 443[1] (Mo.App.1987). Plaintiffs do not contend nor does the record reflect they were misled to their "irreparable harm" by any perceived deficiencies in the notice of appeal. Plaintiffs' contention that we are without jurisdiction because of alleged deficiency in the notice of appeal is rejected.

■■■ Plaintiffs next urge dismissal of Defendants' appeal because of noncompliance with § 435.460 of the Missouri's Uniform Arbitration Act. Section 435.460 specifically requires that any contract containing an arbitration agreement also contain a statement in ten-point capital letters: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Be-

---

4. Section 435.440.1(1) reads:
 "1. An appeal may be taken from:
 (1) An order denying an application to compel arbitration made under section 435.355...."

5. 9 U.S.C. § 2, entitled "Validity, irrevocability, and enforcement of agreements to arbitrate" states as follows:
 "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

cause the § 435.460 statement was not in the Merchant Contract, Plaintiffs contend that we lack jurisdiction over this appeal, citing *Hefele v. Catanzaro*, 727 S.W.2d 475, 477 (Mo.App.1987), as supporting authority.

■ Plaintiffs' reliance on *Hefele* is misplaced. The arbitration agreement in *Hefele* was within the coverage of Missouri's Uniform Arbitration Act, not the federal arbitration act. The requirements of § 435.460 cannot be applied to defeat the arbitration provision of a contract that is within the coverage of the federal statute. *Bunge Corp.,* 685 S.W.2d at 839[2]; *McCarney v. Nearing, Staats, Prelogar and Jones,* 866 S.W.2d 881, 888[13] (Mo.App.1993); *Brookfield R–III School District,* 845 S.W.2d at 105.

■ Finally, Plaintiffs contend that we lack jurisdiction as the trial court's order that denied Defendants' "Motion to Stay Proceeding and Compel Arbitration" was not a final appealable order or judgment as provided in § 512.020, RSMo 1986. They argue that finality is a prerequisite to appellate jurisdiction, and an order is not "final" unless it disposes of all parties, explicitly disposes of all issues, and disposes of all issues on the merits, citing *Hill v. Boles,* 583 S.W.2d 141, 148[5] (Mo. banc 1979); *Maurer v. Clark,* 727 S.W.2d 210, 211 (Mo.App.1987); *Chura v. Bank of Bourbon,* 674 S.W.2d 675, 678 (Mo. App.1984).

A sufficient answer to this argument is found in *Madden v. Ellspermann,* 813 S.W.2d 51 (Mo.App.1991).

> "There is a conflict between § 435.440 and § 512.020 because the former allows an appeal from an order which does not constitute a final judgment while the latter requires a final judgment before an appeal is allowed. When there is a conflict between two statutes, one of which deals with a subject in a general way and the second

treats a part of the same subject in a more detailed way, the specific statute will govern.... Section 512.020 deals with appeals in a general way but § 435.440 deals specifically with an appeal from an order denying an application to compel arbitration. In that instance the special statute allowing an appeal from an order denying arbitration will prevail and the order denying arbitration in this case is appealable."

*Id.* at 53[1, 2] (citation omitted).

On the authority of *Madden,* we reject Plaintiffs' claim that the trial court's order had to comply with all the requirements of § 512.020 to be an appealable order.

Having considered and rejected Plaintiffs' three challenges to our jurisdiction, we deny Plaintiffs' motion to dismiss appeal.

### SCOPE OF THE ARBITRATION CLAUSE

■ Plaintiffs' suit charges that Sherfield tortiously interfered with the Isaacson Contract.[6] The issue presented by this case is whether Plaintiffs' tort claim constitutes an arbitrable issue within the meaning of the "broad" arbitration clause contained in the Merchant Contract.[7] That question appears to be a matter of first impression for a Missouri appellate court.

A summary of general arbitration principles places Defendants' motion to arbitrate in the proper context.

■ There exists a public policy of actively enforcing private arbitration agreements under both the Federal and Missouri arbitration acts so that disputes might be resolved without resort to the courts. *McCarney,* 866 S.W.2d at 887[7]; *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 258[1] (Mo.App.1985). Although arbitration statutes are interpreted liberally, *Village*

---

**6.** "Interference with contractual or business relations is a tort recognized under Missouri law." *Francisco v. Kansas City Star Co.,* 629 S.W.2d 524, 529[1] (Mo.App.1981) (citing *Downey et al. v. United Weather Proofing,* 363 Mo. 852, 253 S.W.2d 976 (1953)). Maliciously procuring a breach of contract constitutes an intentional tort. *Clark–Lami, Inc. v. Cord,* 440 S.W.2d 737, 738[8] (Mo.1969). As a matter of public policy there is a general duty not to interfere intentionally with

the performance of a contract between another and a third person. Restatement (Second) of Torts § 766 (1977).

**7.** Contracts that have language calling for the arbitration of "any controversy or claim" are among those frequently categorized as having "broad" arbitration clauses. *McCarney,* 866 S.W.2d at 889.

*of Cairo,* 685 S.W.2d at 258, and doubts are resolved in favor of arbitration, *see, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983); *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1165 (8th Cir.1984), arbitration is strictly a matter of contract; therefore, a party can be compelled to arbitration only when it has agreed to do so. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986). Standing alone, a public policy favoring arbitration is not enough to extend the application of an arbitration clause far beyond its intended scope. *Fuller v. Guthrie,* 565 F.2d 259, 261 (2nd Cir.1977).

 As the obligation to arbitrate rests on free assent and agreement, the subsistence and validity of an arbitration clause are governed by the usual rules and cannons of contract construction. *Village of Cairo,* 685 S.W.2d at 258[4] (citing *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, 1417 (1960)). Whether a dispute is covered by an arbitration clause is relegated to the courts as a matter of law and is to be determined from the contract entered into by the parties. *Village of Cairo,* 685 S.W.2d at 258[5]. *Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Local Union,* 359 F.2d 598, 600[2] (2nd Cir.1966).

"[A]bsent a clear, explicit statement in the ... contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed ... that the parties did not intend to withdraw such disputes from judicial authority."

*Fuller,* 565 F.2d at 261 (quoting *Old Dutch Farms,* 359 F.2d at 603.)

Defendants contend that the plain and broad language of the Merchant Contract clearly mandates arbitration of Plaintiffs' claim for tortious interference with the Isaacson Contract. They argue that Plaintiffs' claim "necessarily ... has its genesis in the Merchant Agreement" where the arbitration clause is found. In explanation, Defendants

cite § 7 of the Merchant Contract as creating the only "right" by which Plaintiffs could sell their Sears catalog business to anyone and they point to §§ 7–10 as setting forth the procedure by which a sale could take place, therefore they say that the Merchant Agreement "must form the predicate for this 'interference' claim." Their theory is that the "interference" alleged was with the transfer of Plaintiffs' rights under the Merchant Contract and thus is an arbitrable claim as it "aris[es] out of or relat[es] to [the Merchant Contract]." We do not agree.

 The crucial question here is the relationship between Sherfield's statements and the arbitration agreement between the parties, i.e., the existing Merchant Contract containing the arbitration clause. For Plaintiffs' tort claim to be characterized "as aris[ing] out of or relat[ed] to [the Merchant Contract]," and thus subject to arbitration as Defendants contend, it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the Merchant Contract. *See Old Dutch Farms,* 359 F.2d 598 (court refused to stay a tort action brought against a union although it was connected with the subject matter of the collecting bargaining agreement); *Dusold v. Porta–John Corporation,* 167 Ariz. 358, 807 P.2d 526, 530 (1990) (negligence and products liability action for personal injuries from chemicals not arbitrable under license agreement containing a "broad" arbitration clause like that of the instant case). *See also Swensen's Ice Cream Co. v. Corsair Corp.,* 942 F.2d 1307, 1310 (8th Cir.1991). The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties. *Dusold,* 807 P.2d at 530 (citing *Armada Coal Export, Inc. v. Interbulk, Ltd.,* 726 F.2d 1566 (11th Cir.1984)).

 Arbitration must be compelled where a tort claim arises directly out of a dispute regarding the terms of the parties contractual relation, *see Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78, 81–82 (2d Cir.1983) (defamatory statements), or where the statements giving rise to a tort

claim are integrally linked to the contractual relation between the parties, *McMahon v. RMS Electronics, Inc.,* 618 F.Supp. 189, 192[6] (S.D.N.Y.1985), or where defamatory statements giving rise to a tort claim arise from the performance of the contract, *Tac Travel America Corp. v. World Airways, Inc.,* 443 F.Supp. 825, 828 (S.D.N.Y.1978). But where the statements that give rise to a tort claim are independent of the contract terms between the parties and do not require reference to the underlying contracts, arbitration is not compelled. *Popper v. Monroe,* 673 F.Supp. 1228, 1231 (S.D.N.Y.1987).

█ Here, Plaintiffs' claim that interference with the *Isaacson Contract* arises out of Sherfield's statement to the buyers "that there would be a dramatic change in the *new merchant contracts.*" The alleged interference is therefore not with the transfer of rights under the *existing* Merchant Contract as Defendants contend, but is with the Isaacson Contract via statements about the content of *the new merchant contracts.* The tortious conduct alleged did not occur while Sherfield was discussing any aspect of the existing Merchant Contract and did not arise out of a dispute relating to the terms of that contract. The remarks attributed to Sherfield bear no meaningful connection to whether Sears would or would not approve Isaacsons as merchants. To the contrary, the statements attributed to him amount to a tacit acknowledgment that Sears' approval had occurred or was forthcoming. Clearly Sherfield's comments had nothing to do with the performance of the Merchant Contract and, under the circumstances, they were not integrally related to it.

As there is no meaningful connection between Plaintiffs' tort claim and the terms, conditions, or subject matter of the Merchant Contract, we are unpersuaded that such tort claim could reasonably be intended by the parties to have been subject to arbitration within the meaning of this arbitration clause. *See Old Dutch Farms,* 359 F.2d at 601, and *Fuller,* 565 F.2d at 261.

In summary, Plaintiffs' action is in no way based on an alleged breach of the Merchant Contract and neither invokes nor needs to invoke the Merchant Contract. *See Old Dutch Farms,* 359 F.2d at 601. Accordingly,

we find no reason to conclude that this controversy is one "arising out of or relating to [the existent Merchant Contract], or any breach thereof" within the meaning of the arbitration clause.

In reaching our conclusion, we do not ignore the authorities cited by Defendants but find them factually distinguishable or otherwise unpersuasive.

In *Foster v. Sears, Roebuck and Co.,* 837 F.Supp. 1006 (W.D.Mo.1993), plaintiff Tonya Foster, signatory spouse on the merchant agreement, did not deny that she could be compelled to arbitrate her claim if she were the only plaintiff. However, she contended that her husband, who did not sign the contract, was not bound by the arbitration clause of the contract. Therefore, both plaintiffs argued that the district court should not compel the husband to arbitrate and should not compel Tonya to arbitrate. *Id.* at 1008. The issues presented by the instant case were neither presented nor decided in *Foster.*

Plaintiffs in *Caudle v. Sears, Roebuck and Co.,* 245 Ill.App.3d 959, 185 Ill.Dec. 627, 614 N.E.2d 1312 (1993), brought a class action filed on behalf of 2,600 owners of Sears catalog centers. The action was prompted by Sears withdrawal from that market by not renewing merchant contracts. The theory in *Caudle* was that a separate oral investment contract existed between Sears and its catalog store owners, i.e., separate from the written merchant contracts, by which Sears had agreed not to cause catalog store owners and investors to lose their investment without compensation. The *Caudle* court concluded that the investment *contract* was "so closely related to and inextricably intertwined with the Merchant Agreement" that arbitration was compelled. 185 Ill.Dec. at 634, 614 N.E.2d at 1319. *Caudle* dealt with contract claims, not an independent tort claim that required no reference to the underlying contract.

The plaintiff in *Coastal States Trading, Inc. v. Zenith Navigation, S.A.,* 446 F.Supp. 330 (S.D.N.Y.1977), sought to recover the value of a cargo of oil lost at sea. The voyage charter had broad arbitration language which had been incorporated in the bill of lading, consequently, arbitration was or-

dered. *Coastal States* is clearly factually distinguishable from the instant case. It in no way supports the proposition for which Defendants cite it, i.e., that "broad ... arbitration clauses ... mean that the parties agree to arbitrate *all* disputes arising out of the *subject matter* of the contract." *Old Dutch Farms* and its progeny teach otherwise.

Finally, *Lee v. Grandcor Medical Systems, Inc.*, 702 F.Supp. 252 (D.Colo.1988), and *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir.1976), are also factually distinguishable and are not authority that alter our decision.

We conclude, then, that the dispute presented here was not within the scope of the existing Merchant Contract, and the trial court properly concluded that arbitration should not be compelled.

The trial court's judgment denying Defendants' Motion to Compel Arbitration is affirmed.

FLANIGAN and MONTGOMERY, JJ., concurs.