Jewel T. RHODES, Phillip Rhodes, Jr., and Tiffany Rhodes, Respondents,

v.

AMEGA MOBILE HOME SALES, INC., Defendant,

Southern Energy Homes, Inc., Appellant.

No. WD 64798.

Missouri Court of Appeals, Western District.

Jan. 24, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 2006.

Application for Transfer Denied April 11, 2006.

Jon E. Beetem, Jefferson City, MO, for appellant.

Joseph M. Page, Jefferson City, MO, for defendant.

Lewis Z. Bridges, Lake Ozark, MO, for respondents.

Before RONALD R. HOLLIGER, Presiding Judge, ROBERT G. ULRICH, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Southern Energy Homes, Inc. ("Southern Energy") appeals a November 8, 2004 Judgment and Order entered by the Circuit Court of Miller County denying its Motion to Stay and to Compel Arbitration of all claims brought against Southern Energy by Jewel T. Rhodes ("Mrs.Rhodes") and her two minor children, Phillip Rhodes, Jr. ("Phillip") and Tiffany Rhodes ("Tiffany"), who were acting through Mrs. Rhodes as their next friend and will be collectively referred to as "Plaintiffs." We affirm.

As pertinent to this appeal, the essential facts are not in dispute. On July 14, 1998, Mrs. Rhodes and her now-deceased husband purchased a new mobile home from Amega Mobile Home Sales, Inc. ("Amega"), a mobile home dealer located in Ashland, Missouri. The sale contract with Amega does not include any provision relating to arbitration.

The mobile home purchased by Mrs. Rhodes was manufactured by Southern Energy at its plant in Winston County, Alabama. Southern Energy then transported the home to Amega's sales facility in Missouri via federal and interstate highways, and sold it to Amega in interstate commerce in December 1997. Pursuant to its contract of sale with Mrs. Rhodes, on or about August 3, 1998, Amega delivered and installed the mobile home she bought on a tract of Miller County real estate owned by her. The mobile home was covered by a written one-year limited warranty which stated, in relevant part:

> Southern Energy Homes, Inc. (the "manufacturer") warrants to the Original Retail Purchaser(s) (the "owner") of any new mobile home manufactured by Southern Energy Homes, Inc. (the "home") that for a period of twelve (12) months (the "warranty period") from the date the dealer (the "seller") transfers possession of the home to the owner, the home will be free from any serious structural defects in material or workmanship, assuming reasonable maintenance and servicing of the home by the owner as described in the Owner's Manual.

On March 21, 2002, Plaintiffs filed a two-count Petition seeking damages from both Amega and Southern Energy. The petition alleged, *inter alia,* as to both defendants, that that Mrs. Rhodes had entered into a contract with Amega for the sale, purchase, delivery, and installation of a

mobile home; that the home was delivered by Amega; and that, at the time it was delivered and installed, the home was "in a dangerous, defective condition" and was "not habitable" due to the presence of excessive levels of formaldehyde gas within the home.

In Count I of their Petition, Plaintiffs pled a claim for breach of contract against Amega, which resulted in various financial losses, as well as personal injury to Mrs. Rhodes and her minor children Phillip and Tiffany as described in Count II.[1] In Count II, Plaintiffs pled a product liability claim against Southern Energy, alleging that (1) the home "was and is defective and in a dangerous condition in that the manufacture, design or component materials of said mobile home" caused it "to excrete excessive levels of formaldehyde gas in the interior of said manufactured home"; and (2) that "as a direct and proximate cause of said defective and dangerous condition" of the home, which reached Mrs. Rhodes "without substantial change in the condition in which it was sold" to Amega, Mrs. Rhodes' minor children Phillip and Tiffany "have exhibited excessive levels of formaldehyde in their blood systems" and that Mrs. Rhodes, Phillip, and Tiffany had all "incurred damage to their respiratory systems and exhibit allergic reactions to formaldehyde and other common household agents not present prior to occupying said mobile home," necessitating medical treatment and associated medical expenses.

Amega and Southern Energy both filed answers. Among other things, in its answer, which was filed on May 9, 2002, Southern Energy averred, as to the claims in Count II, that Plaintiffs had all agreed to binding arbitration as stated in the terms of the warranty, which also provided:

All disputes between us ... resulting from or arising out of the design, manufacture, warranty, or repair of the manufactured home, (including but not limited to: the terms of the warranty, the terms of this arbitration agreement, and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services manufactured or provided by Southern Energy Homes, Inc.; the condition of the manufactured home; the conformity of the manufactured home to federal building standards; the representations, promises, undertakings, warranties or covenants made by Southern Energy Homes, Inc., (if any); or otherwise dealing with the manufactured home); will be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. section 1, et. seq. and according to the Commercial Rules of the American Arbitration Association then existing in Addison, Alabama, where Southern Energy Homes, Inc. maintains its principal place of business. .... *THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL ACTION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY.*

---

1. The trial court's docket sheets show that on December 11, 2003, the court sustained Amega's motion to dismiss "as to Count II, the products liability count, as [Amega] is a seller only in the stream of commerce." *See* §§ 537.762.1 & .2, RSMo 2000, which provide (subsection numbers omitted): "A defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim as provided in this section. This section shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." Amega's motion to dismiss was denied as to all other claims against it.

On June 10, 2004, Southern Energy filed its Motion to Stay and to Compel Arbitration, which sought a stay and an order compelling binding arbitration of all claims brought against Southern Energy by all three plaintiffs. On September 23, 2004, the trial court held a hearing on this motion, during which all parties appeared by counsel and presented oral argument. On November 9, 2004, the trial court entered its Judgment and Order denying Southern Energy's Motion to Stay and to Compel Arbitration. Further finding "no just reason to delay finality" under Rule 74.01(b), the court also designated its Judgment and Order as final for purposes of appeal. This timely-filed appeal by Southern Energy followed.[2]

▇▇▇ There is no dispute that, if Plaintiffs' products liability claims against Southern Energy are arbitrable at all, Southern Energy's entitlement to enforcement of the arbitration clause contained in the mobile home's warranty is governed by the Federal Arbitration Act ("FAA"; 9 U.S.C. §§ 1–14), and that Southern Energy was entitled to appeal the trial court's denial of its motion to compel arbitration under § 435.440.1(1), RSMo 2000. *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 774 & n. 2 (Mo. banc 2005); *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 305–07 (Mo.App. W.D.2005). "Whether a dispute is covered by an arbitration provision is relegated to the courts as a question of law. An appellate court's review of the arbitrability of a dispute is *de novo*." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003) (internal citation omitted). Likewise, the question of whether Southern Energy's "motion to compel arbitration should have been granted is [also] one

of law, to be decided by this court *de novo*." *Triarch*, 158 S.W.3d at 774.

In its sole point relied on, Southern Energy contends the trial court erred in denying its motion to compel binding arbitration of all claims brought against Southern Energy by all three plaintiffs because (1) Southern Energy's warranty contained an express arbitration clause; (2) arbitration clauses which affect or involve interstate commerce are specifically enforceable pursuant to 9 U.S.C. § 2; and (3) the arbitration clause here is enforceable, in that Plaintiffs' claims are within the scope of matters which must be arbitrated and all three plaintiffs have sought and obtained the benefits of the warranty and are suing Southern Energy for breach of that warranty.

▇▇▇ Notwithstanding Southern Energy's repeated assertions to the contrary throughout its opening and reply briefs, Count II of Plaintiffs' Petition does *not* seek relief against Southern Energy on a breach of warranty theory, because it does not seek recovery of damages arising "from any serious structural defects in material or workmanship," as would be required to state a claim under the terms of the warranty (which, as noted *supra*, is expressly limited to such claims). In fact, nowhere in the Petition is the existence of a warranty, much less its breach, ever pled or relied on. Instead, as is clear from the factual summary provided *supra*, Count II states a *products liability* claim against Southern Energy based on Plaintiffs' claim that the home "was and is defective and in a dangerous condition in that the manufacture, design or component materials of said mobile home" caused it "to excrete excessive levels of formaldehyde gas in the interior of said manufactured home." Thus Count II does not seek recovery

---

**2.** Amega has not appealed the trial court's denial of its request for arbitration of Plain-

tiffs' remaining claims against Amega in Count I.

against Southern Energy on the ground that the mobile home was *structurally* unsound due to defects in material or workmanship. Rather, Count II seeks recovery against Southern Energy on the ground that the home was defective and in an unreasonably dangerous condition when sold to them because its manufacture, design, and/or component materials caused it to emit excessive interior levels of formaldehyde gas, resulting in personal injury to Mrs. Rhodes, Phillip, and Tiffany. "Plaintiffs' action [against Southern Energy] is in no way based on an alleged breach of the [limited warranty] and neither invokes nor needs to invoke the [warranty]." *Greenwood v. Sherfield*, 895 S.W.2d 169, 175 (Mo.App. S.D.1995). Therefore, Plaintiffs "did not file the Petition on the basis of the [warranty] or a breach of it, but rather on the basis of allegations of product liability ... due to an alleged manufacturing and/or design defect in the [mobile home]." *Northwest Chrysler–Plymouth, Inc. v. Daimlerchrysler Corp.*, 168 S.W.3d 693, 696 (Mo.App. E.D.2005).

This is critical to the proper resolution of this appeal, because 9 U.S.C. § 2, which is entitled "Validity, irrevocability, and enforcement of agreements to arbitrate" and must be applied as substantive law "where a Missouri court is addressing an arbitration provision falling within the FAA," *Whitney*, 173 S.W.3d at 306, states (emphasis added):

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration *a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof,* or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

As this court explained in *Estate of Athon v. Conseco Finance Servicing Corp.*, 88 S.W.3d 26 (Mo.App. W.D.2002), while a party "cannot avoid the broad language of an arbitration clause [simply] by casting its complaint in tort" rather than contract, arbitration of a tort claim is only compulsory where the "tort claim arises directly out of a dispute regarding the terms of the parties' contract." *Id.* at 30; *see also Northwest Chrysler–Plymouth*, 168 S.W.3d at 696.

At the very least, for a tort claim to be subject to arbitration under a broad arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract. Where, however, a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not compelled.

*Estate of Athon*, 88 S.W.3d at 30; *see also Northwest Chrysler–Plymouth*, 168 S.W.3d at 696.

Because Plaintiffs' product liability claims against Southern Energy do not arise directly out of a dispute regarding the terms of the limited warranty and "do not raise any issue the resolution of which requires reference to or construction of some part of" the warranty, they "do not arise out of" the warranty. *Northwest Chrysler–Plymouth*, 168 S.W.3d at 696. Furthermore, resolution of those claims "does not require an examination of the parties' respective obligations and performance under" the warranty. *Id.* Finally, the product liability claims pled in Count II "do not arise out of" any transaction associated with the warranty, because "[a]n alleged manufacturing and/or design defect, the basis for liability, bears no meaningful connection to the sale transac-

tion" between Mrs. Rhodes and Amega. *Id.* at 697. "The tort claims are independent of the sale. [Plaintiffs] could maintain such claims against [Southern Energy] regardless of the [warranty] and the sale transaction." *Id.*

Accordingly, the trial court did not err in refusing to compel arbitration of those claims. *See, e.g., id.* (dealer's product liability claim that automobile caught fire due to defect in engine or electrical system, resulting in damage to showroom and other cars, was not arbitrable despite arbitration provision in sales and service agreement between dealer and manufacturer); *Missouri & N. Ark. R.R. v. Branson Scenic Ry.,* 3 S.W.3d 869, 871–72 (Mo.App. S.D.1999) (liability as between parties for their respective damages sustained in a railroad collision would be determined under common law principles of duty, breach, causation, and damages since negligence claims involved raised no issue involving the contractual operating agreement between the parties and, therefore, were not "in connection with" that agreement); *Greenwood,* 895 S.W.2d at 174, 175 (tort claim for conversion not related to the contract containing the arbitration clause because it was not based upon an alleged

breach of the contract and because it did not, and did not need to, invoke the contract); *Southwestern Bell Tel. Co. v. Buie,* 689 S.W.2d 848, 853 (Mo.App. E.D.1985) (*prima facie* tort claim not barred by arbitration provision of labor contract since the basis for the tort claim was the particular tortious acts alleged in petition, not the breach of that contract).

The authorities cited by Southern Energy are readily distinguishable, inapposite, and/or unpersuasive.[3] In this regard, it suffices to say that "Missouri courts are not alone in refusing to enforce contractual agreements [to arbitrate] beyond claims based on contract performance." *Serv. Vending Co. v. Wal–Mart Stores, Inc.,* 93 S.W.3d 764, 768 n. 3 (Mo.App. S.D.2002) (citing cases from other jurisdictions); *see also Greenwood,* 895 S.W.2d at 174 (collecting state and federal cases in which various causes of action in tort, including negligence and products liability actions involving alleged personal injuries, were held to be non-arbitrable).

▇▇▇ Relying on *Dunn* (where our Supreme Court observed, 112 S.W.3d at 437, that "[b]y accepting [its] benefits, a party

---

**3.** *See Estate of Athon,* 88 S.W.3d at 30 (tort claims of respondeat superior, conversion, trespass, interference with expectancy, and unlawful repossession of personal property all raised issues of the defendant's right to enter the property and to repossess a mobile home that required reference to a contract between the parties, and, therefore, the claims were subject to the arbitration provision of the contract); *Getz Recycling v. Watts,* 71 S.W.3d 224, 228–29 (Mo.App. W.D.2002) (tort counterclaims for negligent misrepresentation and misrepresentation were sufficiently related to counterclaims for breach of contract, breach of implied warranty, breach of express warranty, and breach of warranty of merchantability as to make all counterclaims arbitrable); *Costanza v. Allstate Ins. Co.,* No. 02–1492, 2002 WL 31528447, 2002 U.S. Dist. LEXIS 21991 (E.D.La. Nov. 12, 2002) (motion to

compel arbitration and stay proceedings granted where parents' claims for water damage and personal injury to them and their minor children arising from an allegedly negligently installed and defectively manufactured exterior insulation and finish system on their home fell within scope of arbitration clause contained in home's structural limited warranty, assuming that the children intended to enforce rights under the warranty); *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069 (5th Cir.2002) (affirming order requiring adult purchasers of mobile home to submit their formaldehyde gas-related personal injury claims arising out of the alleged defective design and manufacture of the home to binding arbitration but reversing order compelling their minor children to arbitrate their personal injury claims as well).

may be estopped from questioning the existence, validity, and effect of a contract") and similar cases from other jurisdictions, Southern Energy nevertheless maintains that all three plaintiffs (including the children) "are equitably estopped from now claiming they are not subject to arbitration" and must arbitrate their claims against Southern Energy because "in accepting the benefits of Southern Energy's warranty and in suing for breach thereof [they] are equally bound by its other terms—the mandatory binding arbitration provisions." We cannot agree. To begin with, as noted *supra*, Plaintiffs *did not* sue Southern Energy for breach of warranty. Moreover, even if they had, the fact that some of them may have accepted some of the benefits of the warranty[4] would not have equitably estopped them from avoiding mandatory binding arbitration of their products liability action against Southern Energy, because that claim is entirely "independent of the [warranty] terms and does not require reference to the underlying contract" in any way. *Estate of Athon,* 88 S.W.3d at 30. In other words, it was an entirely independent cause of action which arose out of neither the warranty agreement nor Southern Energy's performance thereof, to which general principles of equitable estoppel do not apply.

▉ Finally, Southern Energy also argues that the trial court erred in failing to order Plaintiffs to submit their claims against Southern Energy to arbitration because "their attorney has consented" to the entry of such an order and is "judicially estopped" from contending otherwise.

During oral argument on Southern Energy's Motion to Stay and to Compel Arbitration of all claims brought against Southern Energy by all three plaintiffs, counsel for Plaintiffs took the position that, although Mrs. Rhodes' claims might conceivably be arbitrable, Phillip and Tiffany could not be compelled to arbitrate their claims against Southern Energy because they were neither signatories of nor parties to either the purchase contract or the warranty agreement. Counsel also expressed concern that there might be inconsistent results if Mrs. Rhodes' claims against Southern Energy were submitted to binding arbitration while those of the minor children were not. Plaintiffs' counsel then went on to say: "Having said that, Your Honor, I am also going to say I am not in favor of litigating this case two or three times, and if the Court is inclined to order arbitration as to the claims of Jewel Rhodes, then I will agree to arbitrate all of the claims because I don't want to, you know—... [d]o this two or three times." This was hardly a binding, unequivocal "consent" to arbitrate Plaintiffs' claims against Southern Energy (much less an act justifying the imposition of any form of estoppel), as it was expressly conditioned on the trial court's "inclin[ation]" to order arbitration of Mrs. Rhodes' claims. Furthermore, as we have already held that the trial court properly refused to compel arbitration of *any* of the plaintiffs' claims against Southern Energy as pled in Count

---

4. According to an affidavit filed by Southern Energy in connection with its Motion to Stay and to Compel Arbitration, in or around July 1999, Southern Energy performed (or assisted Amega in performing) various warranty repairs requested by Mrs. Rhodes. However, the materials supporting the affidavit demonstrate that *all* of these repairs were related to structural and/or cosmetic manufacturing defects, *not* the alleged presence of excessive levels of formaldehyde gas within the mobile home. For their part, Plaintiffs do not dispute that Mrs. Rhodes requested that Amega and/or Southern Energy perform certain repair work on the mobile home, and that she accepted at least some of that work. They also correctly point out that the record contains no evidence that Phillip or Tiffany "were parties to any contract or accepted the benefits of any contract or warranty."

II, counsel's "consent" was, at best, nugatory. Point denied.

The judgment of the trial court is affirmed.

All concur.