**POLYTEK ENGINEERING CO., LTD.**

v.

**JACOBSON COMPANIES**
**and Jacobson, Inc.**

**No. 97–CV–1767 (JMR/FLN).**

United States District Court,
D. Minnesota.

Dec. 12, 1997.

Lawrence Jeffrey Field, Leonard Street & Deinard, Minneapolis, MN, David W. Rivkin, Timothy K. Beeken, Debevoise & Plimpton, New York, NY, for Polytek Engineering Co., Ltd., plaintiff.

Peter A. Koller, Thomas A Keller, III, Kevin Mark Busch, Moss & Barnett, Minneapolis, MN, for Jacobson Companies, Jacobson Inc., defendant.

ORDER

ROSENBAUM, District Judge.

Plaintiff, Polytek Engineering Co., Ltd. ("Polytek"), asks this Court to confirm a $1,700,367.41 foreign arbitral award granted in its favor, pursuant to Article III of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and 9 U.S.C. §§ 201–208. The award was issued on May 26, 1997, by an arbitration panel of the Chinese International Economic and Trade Arbitration Commission ("CIETAC"). The arbitral award was rendered against defendant Jacobson, Inc. ("Jacobson"),[1] on a finding that Jacobson breached its contract

---

1. Jacobson, Inc., uses "Jacobson Companies" to identify some of its products. The Court, however, has been unable to identify a separate "Jacobson Companies" entity. (Sorensen Aff., p. 1).

with Polytek. The Court heard oral argument on October 3, 1997.

### I. *Background*

Polytek Engineering Co., Ltd., is a Hong Kong organized corporation with its principal place of business in Hong Kong. Defendant Jacobson, Inc., is a Minnesota corporation with its principal place of business in this state. Jurisdiction is premised on 9 U.S.C. § 203, and venue is proper under 9 U.S.C. § 204 and 28 U.S.C. § 1391. For the purposes of this motion, the parties agree that Jacobson has never had staff, property, assets, or personnel outside of the United States.

In 1992, Polytek began negotiating with Hebei Import & Export Corp. ("Hebei"), based in the People's Republic of China, to sell rubber recycling equipment for a factory in China's Hebei Province. In November, 1992, Polytek contacted Jacobson, a manufacturer of this type of equipment. After this initial contact, however, Polytek and Jacobson forestalled entry into a formal purchase agreement until Polytek concluded its contract with Hebei. In April, 1993, Polytek entered into a contract with Hebei to sell the equipment (the "Hebei Contract"). Polytek then turned to Jacobson to obtain the equipment needed to satisfy the Hebei Contract.

To begin its purchase of the rubber recycling equipment, Polytek sent a one page U.S. $865,000 equipment Purchase Order to Jacobson, dated May 10, 1993. (Polytek Pet., Exh. A). The Purchase Order requested:

> One Set—Rubber Recycling Equipment including spare parts for two years; special tools; commissioning and training charges. For detail specification and terms, please refer to the attached contract.

The Purchase Order contained a section titled "Remarks," which provided that: "All the terms and conditions should conform with the main contract attached." Attached to the Purchase Order was a copy of the Hebei Contract. (Polytek Pet., Exh. A).

The Hebei Contract included a number of terms, in addition to technical equipment specifications. Section 10 of the Hebei Contract required the seller to provide either an irrevocable letter of guarantee or a standby letter of credit. Section 19 of the Hebei Contract contained the following arbitration clause:

> All disputes in connection with this contract or the execution thereof shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case should then be submitted for arbitration to the Arbitration Commission of the China Council of the Promotion of International Trade [2] in accordance with the rules and procedures promulgated by the said Arbitration Commission. The arbitration shall take place in Beijing, China and the decision of the Arbitration Commission shall be final and binding upon both parties; neither party shall seek recourse to a law court or other authorities to appeal for revision of the decision. The arbitration fee shall be borne by the losing party.

(Polytek Pet., Exh. A).

Subsequent to Polytek's submission of the May 10, 1993, Purchase Order, Polytek and Jacobson discussed the irrevocable letter of guarantee or standby letter of credit, as required by the Hebei Contract. The parties agreed Jacobson would provide a standby letter of credit to Polytek, and Polytek would send Jacobson a deposit. Based upon its agreement with Polytek, Jacobson manufactured and shipped the recycling equipment to China and received payment from Polytek as specified in the Purchase Order.

In May, 1995, Hebei claimed the Jacobson equipment failed to conform to contract specifications, and began a CIETAC arbitration proceeding against Polytek, its seller. On March 29, 1996, the arbitration tribunal awarded Hebei a total of U.S. $1,266,933.85 and 4,762,132.56 RMB, and ordered Polytek to collect the equipment at its cost. (Polytek Pet., p. 4).

Thereafter, on April 3, 1996, Polytek began its own CIETAC arbitration against Jacobson in Beijing, China, claiming Jacobson breached the Hebei Contract attached to the May 10, 1993, Purchase Order. Polytek

---

**2.** Now known as the Chinese International Economic and Trade Arbitration Commission.

claimed Jacobson supplied equipment which did not conform to contract specifications. Jacobson initially ignored the notice given by CIETAC, but ultimately replied to the Chinese arbitral forum in November, 1996. (Polytek's Pet., pp. 4–6). Jacobson's reply denied CIETAC's jurisdiction over the matter and the existence of any arbitration agreement between Polytek and Jacobson. (Lau Decl., Exh. 33). CIETAC considered the issue of jurisdiction prior to examining the case on the merits, and, on December 23, 1996, CIETAC issued a decision finding jurisdiction was proper. (Polytek Pet., Exh. B).

Upon rendering its decision, CIETAC wrote to both parties advising them it would hear the trade dispute on March 17, 1997. Jacobson did not appear at the hearing. CIETAC then notified Jacobson that the hearing had taken place and requested objections or further responses by April 20, 1997. CIETAC received nothing from Jacobson. (Polytek Pet., pp. 7–8).

CIETAC issued its decision on May 26, 1997, awarding Polytek U.S. $1,700,367.41, and ordering Jacobson to dismantle and collect the recycling equipment at its own expense. (Polytek Pet., Exh. C).

## II. *Discussion*

### A. *The Convention*

Chapter 2 of the Federal Arbitration Act grants federal courts the power to affirm foreign arbitral awards. This Chapter enables the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), to which the United States is a signatory. *See* 9 U.S.C. § 201. The Convention governs foreign arbitration disputes resulting from international commercial transactions. *See Filanto, S.p.A. v. Chilewich Int'l Corp.,* 789 F.Supp. 1229, 1234 (S.D.N.Y.1992); 9 U.S.C. § 202. "The goal of the Convention is to facilitate and stabilize international business transactions by promoting the enforcement of arbitral agreements in contracts involving international commerce." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 620 (8th Cir.1997). Under the Convention, a party to an arbitration has three years to seek an order confirming an award. *See* 9 U.S.C. § 207. The Convention directs that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them ...." Convention, Art. III, 9 U.S.C. § 201. A court must "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the ... Convention." 9 U.S.C. § 207.

The Convention compels a court to conduct the following limited, four-part inquiry when deciding whether to confirm an award:

1. Is there an agreement in writing to arbitrate the subject of the dispute?
2. Does the agreement provide for arbitration in the territory of the signatory of the Convention?
3. Does the agreement arise out of a legal relationship whether contractual or not, which is considered as commercial?
4. Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

*Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186–87 (1st Cir.1982) (citations omitted); *see also Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 959 (10th Cir.1992); *Filanto,* 789 F.Supp. at 1236.

The Court does not consider the last of these three questions to be in serious dispute. The answer to the second question is simple: If the Hebei Contract is part of the Polytek/Jacobson agreement, there is a contract to arbitrate. And if the Hebei Contract is part of the agreement, it provides for arbitration in China, a signatory to the Convention. *See* 9 U.S.C. § 201.

The third question asks whether some form of contract or legal contractual relationship existed between Polytek and Jacobson. Both Polytek and Jacobson stipulated in their pleadings that theirs was a legal and contractual relationship. While the parties differ as to the date the contract actually took effect, there is no question that the recycling equipment was transferred, and Polytek paid, pursuant to the parties' Purchase Order contract. The parties do not

deny the commercial nature of the transaction.

As to the fourth question, Polytek is certainly one of the parties to the agreement. It is not an American corporation, and its commercial relationship with Jacobson relates to China, a foreign country. The fourth question is satisfied.

It is the first question—"Is there an agreement in writing to arbitrate the subject of the dispute?"—to which the Court now turns.

### B. *An Agreement in Writing to Arbitrate*

The Convention defines an agreement in writing as an "arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention, Art. II, para. 2, 9 U.S.C. § 201. Jacobson claims it never agreed to Chinese arbitration, nor did it manifest an intent to do so.

The Chinese arbitration clause lies within Section 19 of the Hebei Contract attached to Polytek's May 10, 1993, Purchase Order. The Purchase Order twice refers to the attached Hebei Contract, and includes the statement: "All the terms and conditions should conform with the main contract." For the reasons set forth below, the Court finds Section 19 of the Hebei Contract, attached as it was to the Purchase Order, satisfies Article II's definition of an "agreement in writing."

■ The parties' behavior relative to this Purchase Order and attachment lends credence and support to this determination. Polytek and Jacobson had conducted preliminary negotiations in November, 1992, but waited until April, 1993—until the Hebei Contract was completed—before entering into their own purchase and manufacture agreement. Jacobson's president, Ivar W. Sorensen, sent a facsimile message to Polytek, dated February 24, 1993, stating: "We hope that you will be able to finish up the contract work this week [with Hebei], as planned. From our discussion, my understanding is that you will then issue us a Polytek Purchase Order, with the official contract attached." (Lau's Decl., Exh. 15). The manager responsible for the negotiation on behalf of Polytek, Lau Yiu Chung Reddy, faxed a reply to Mr. Sorensen's message on March 2, 1993, stating: "We'll issue a purchasing order with the contract as attachment to you within this week." (Lau's Decl., Exh. 20).

While the exact date the Purchase Order was delivered is in dispute, the date of its arrival is irrelevant. There is no question it arrived and was the document which governed the Polytek/Jacobson relationship. The parties' subsequent conduct decisively illustrates the Hebei Contract's direct influence on each party's transactional behavior.

On May 18, 1993, Mr. Lau asked Jacobson to provide an irrevocable letter of guarantee or a standby letter of credit, as required by Section 10 of the Hebei Contract. (Lau's Decl., Exh. 23). Mr. Sorensen declined to provide a standby letter of credit on behalf of Jacobson. (Lau's Decl., Exh. 24). After further correspondence, Polytek and Jacobson agreed to a deposit and a standby letter of credit arrangement satisfactory to both sides. (Lau's Decl., Exh. 26). This behavior shows that the parties were directly aware of, and were influenced in their contract performance by, the Hebei Contract far beyond the confines of specifications for the manufacture and delivery of rubber recycling equipment.

While Mr. Sorensen indicated initial disagreement with the letter of credit requirement, neither he nor anyone on Jacobson's behalf indicated any problem with the arbitration provision in Section 19 of the Hebei Contract. (Lau's Decl., p. 12). Mr. Sorensen wrote Polytek on July 21, 1993, indicating "the contract date, ... will be the date we confirm receipt of the [Polytek] deposit." (Lau's Decl., Exh. 27). Mr. Sorensen then sent a facsimile, dated July 23, 1993, confirming Jacobson's receipt of Polytek's deposit and the commencement of the contract. (Lau's Decl., Exh. 28).

All terms of the agreement, with the exception of the compromised change concerning the letter of credit, were thereby adopted, confirming Jacobson's compliance with the Polytek Purchase Order and attached Hebei Contract. Thus, this Court finds that an "agreement in writing," as contemplated by the Convention, existed between Polytek and Jacobson.

### C. *Challenging Enforcement of an Arbitration Award*

Article V of the Convention governs a party's challenge to enforcement of an arbitration award. The challenging party must prove: 1) it was under an incapacity at the time the agreement was made; 2) the arbitration agreement was not valid under the law which the parties have subjected it, or under the law of the country where the award was made; 3) the party was not given proper notice of the proceeding; 4) the award concerned an issue which did not fall within the arbitration agreement; 5) the arbitration panel was invalid; or 6) the award has not yet become final. *See* Convention, Art. V, para. 1, 9 U.S.C. § 201.

Jacobson does not argue that it falls under these criteria. Its attack on the arbitral award is restricted to its challenge to the claimed contract to arbitrate. An arbitration award may also be refused if "the subject matter of the difference is not capable of settlement by arbitration under the law of [this] country; or the recognition or enforcement of the award would be contrary to the public policy of [this] country." Convention, Art. V, para. 2, 9 U.S.C. § 201. Neither of these elements has been demonstrated to the Court. And again, this is not the thrust of Jacobson's argument.

In the absence of any defect under Article V of the Convention, and having found the written agreement to arbitrate encompassed in the May 10, 1993, Purchase Order, with the Hebei Contract attached, this Court must confirm the foreign arbitration award.

### III. *Conclusion*

For the reasons set forth above, IT IS ORDERED that:

1. The May 26, 1997, arbitration award issued by the China International Economic and Trade Arbitration Commission is recognized as binding and enforceable, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and 9 U.S.C. §§ 201–208.

2. Defendant Jacobson shall pay plaintiff Polytek the sum of U.S. $1,700,367.41, plus interest at the rate of nine percent (9%), as specified in the arbitration award.

3. Defendant Jacobson shall dismantle and collect the rubber recycling equipment at its own expense.

LET JUDGMENT BE ENTERED ACCORDINGLY.