■ GABRIEL CAPITAL, L.P. et al., Respondents, v CAIB INVEST-MENTBANK AKTIENGESELLSCHAFT, Appellant, et al., Defendant. [814 NYS2d 66]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered July 21, 2004, which, to the extent appealed from, denied defendant CAIB's motion to dismiss for lack of personal jurisdiction, unanimously affirmed, without costs, and order, same court and Justice, entered April 27, 2005, which denied defendant CAIB's motion to dismiss or stay based on an arbitration clause, unanimously reversed, on the law, without costs, the motion granted and the matter stayed pending arbitration.

Plaintiff Gabriel Capital, an investment firm with its principal place of business in New York, manages the investments of

plaintiff Ariel Fund, which is organized and has its principal place of business in the Cayman Islands. Defendants are an Austrian investment banking firm, CAIB, and its subsidiary, CIS Emerging Growth (CISEG). This action, seeking damages for fraud, negligent misrepresentation, promissory estoppel and unjust enrichment, arose as a result of defendants' alleged misrepresentations for the purpose of inducing plaintiffs to purchase controlling interest in a Russian titanium production company, AVISMA. The parties' Agreement on Purchase of Shares (purchase agreement) included an arbitration clause governing "[a]ll disputes, controversies or claims arising out of . . . this Agreement or the validity, interpretation, performance or breach thereof." Prior to this action, the parties, pursuant to their agreement, held an arbitration proceeding in London to resolve plaintiffs' virtually identical claims. Plaintiffs commenced this action when the arbitral panel issued a decision and award favoring CAIB.

We rely upon CPLR 302 (a) (3) (ii) in affirming the motion court's denial of CAIB's motion to dismiss for lack of personal jurisdiction (*see Matter of American Dental Coop. v Attorney-General of State of N.Y.*, 127 AD2d 274, 279 n 3 [1987]). In our view, plaintiffs sufficiently allege, without dispute, that defendants, through CAIB's wholly owned subsidiary and especially employees Lopatinsky and Radzinsky, committed tortious acts (the misrepresentations) outside of New York causing injury to property within New York, that they should have reasonably expected such acts to have consequences in New York, and that they derive substantial revenue from international commerce.

However, the court erred in denying CAIB's motion to dismiss or stay based upon the aforementioned arbitration clause. Pursuant to article II, § 2 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (reprinted following 9 USCA § 201), the definition of the requisite "agreement in writing" to arbitrate "shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties *or contained in an exchange of letters or telegrams*" (emphasis added) (*Standard Bent Glass Corp. v Glassrobots Oy*, 333 F3d 440, 449 n 14 [3d Cir 2003] [under the Convention "the agreement in writing to an arbitral clause may be unsigned if it is exchanged in a series of letters"]; *see also Chloe Z Fishing Co., Inc. v Odyssey Re [London] Ltd.*, 109 F Supp 2d 1236, 1250-1252 [SD Cal 2000]). Here, the record shows that the latter event is precisely what happened. The draft of the aforementioned purchase agreement, with its arbitration clause, was faxed to plaintiffs by Lopatinsky and Radzinsky (*Chloe Z*, 109 F Supp 2d at 1250

["exchange of letters or telegrams" should be interpreted to include faxes]); plaintiff Gabriel Capital responded with a fax of a signed subscription agreement referring to the purchase agreement; Radzinsky subsequently faxed plaintiffs the final version of the purchase agreement signed by CISEG, which still contained the arbitration clause; plaintiffs responded with a fax to Radzinsky of a letter seeking final reassurances and otherwise treating the purchase agreement as a valid agreement; Radzinsky agreed to the reassurances by signing the bottom of the letter on behalf of CAIB and faxing it back the same day; later that day, Gabriel Capital paid for the AVISMA shares by wire transfer and faxed the details of the transfer to Radzinsky. Plaintiffs' various contentions opposing the efficacy of this exchange as an agreement, and the authorities they rely upon, are without merit. The subscription form incorporates the agreement by reference, including its arbitration clause (*see Liberty Mgt. & Constr. v Fifth Ave. & Sixty-Sixth St. Corp.*, 208 AD2d 73 [1995]; *Standard Bent Glass*, 333 F3d at 449-450). Also, the agreement is evidenced by the parties' performance, i.e., plaintiffs purchased the shares of AVISMA obtained for it by CISEG (*see e.g. Standard Bent Glass*, 333 F3d at 445).

The agreement is enforceable by CAIB against plaintiffs, despite the fact that CAIB itself was not a signatory. The necessary conditions for such enforcement are present here (*see e.g. JLM Indus., Inc. v Stolt-Nielsen SA*, 387 F3d 163, 177-178 [2d Cir 2004]; *Smith/Enron Cogeneration Ltd. Partnership, Inc. v Smith Cogeneration Intl., Inc.*, 198 F3d 88, 97-98 [2d Cir 1999], *cert denied* 531 US 815 [2000]). As previously noted, the agreement reached by plaintiffs and CISEG, CAIB's subsidiary, via exchange of documents, included plaintiffs' signed subscription form, which incorporated by reference the arbitration clause of the purchase agreement signed by CISEG. In addition, plaintiffs not only allege in the complaint that CAIB acted in concert with CISEG, but they also treat CISEG and CAIB as a group, and make claims against CAIB that presume the agreement's existence and are intertwined with it. Thus, enforcement by CAIB is allowed (*see JLM Indus.*, 387 F3d at 177-178).

Finally, we find a stay of this action to be more appropriate relief than dismissal, since it would preserve plaintiffs' access to a forum to litigate any claim that might eventually be deemed beyond the scope of the arbitration clause. Concur—Mazzarelli, J.P., Saxe, Sullivan, Nardelli and Williams, JJ.