SEABOARD CORPORATION, et al., Respondents,

v.

GRINDROD LIMITED, et al., Appellants.

No. WD 67628.

Missouri Court of Appeals, Western District.

Jan. 15, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2008.

Application for Transfer Denied April 15, 2008.

Patrick J. Stueve, Kansas City, MO, for Respondent.

Robert O. Jester, Kansas City, MO, for Appellant.

Before HOWARD, C.J., and SPINDEN and HOLLIGER, JJ.

VICTOR C. HOWARD, Chief Judge.

## Introduction

The Defendants in a civil action in Jackson County, Missouri, filed a Motion to Stay the litigation so that arbitration could be compelled in New York. The trial court denied the Motion to Stay and we affirm.

## Factual and Procedural Background

The Plaintiffs in this action, Seaboard, one of its subsidiaries and one of its divisions (collectively referred to as the Plaintiffs) filed a Petition against the Defendants in Jackson County. The Defendants are Grindrod and three of its entities (collectively referred to as the "Corporate Defendants") and Kevin Neilson, a former employee of Seaboard.

In their Petition, the Plaintiffs allege that, while still employed by them, Neilson began to work with the Corporate Defendants in order to force the Plaintiffs to sell a portion of their business for below market price. They additionally allege that the Defendants lured other employees of the Plaintiffs to leave and begin working for the Defendants. Against Neilson, the Plaintiffs allege fraud, negligent misrepresentation, breach of fiduciary duty, misappropriation of corporate opportunity, breach of confidentiality agreements, civil conspiracy, and tortious interference with prospective business expectancy or prospective business relationships. Against the Corporate Defendants, the Plaintiffs allege civil conspiracy, tortious interference with contract, aiding and abetting breach of fiduciary duty, and tortious interference with prospective business expectancy or prospective business relationships.

After being served, the Defendants attempted to remove the action to the federal court based on the international Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"),[1] implemented by the United States Code in Chapter 2 of Title 9. 9 U.S.C. § 201 (2000). The Defendants argued that all of the claims were covered by arbitration agreements. They argued that an employment letter that contained an arbitration clause covered the claims against Neilson and that the claims against the Corporate Defendants were covered by the Asset Purchase Agreement for the sale of the Plaintiffs operation. The federal court denied the removal based on a finding that neither arbitration clause was applicable.

The Defendants then filed a motion to stay the Jackson County litigation based on their filing a motion to compel arbitration in New York.[2] Following extensive briefing and a hearing, the trial court de-

---

1. The Convention applies in this case because some of the Plaintiffs and Defendants are foreign corporations. Neither party disputes that the Convention is applicable in this case.

2. The Defendants filed in New York based on the forum selection clause in the Purchase Asset Agreement arbitration clause.

nied the motion to stay. Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, the denial of the motion to stay is immediately appealable. 9 U.S.C. § 16 (2000); Missouri Supreme Court Rule 74.01(b) (2007). The trial court based its decision, like the federal court, on the finding that there was no "valid or pertinent arbitration agreement" between any of the parties.

## Standard of Review

■■■■ Our review of a denial of a motion to stay is *de novo*. *Getz Recycling, Inc. v. Watts*, 71 S.W.3d 224, 227–28 (Mo. App. W.D.2002). We first "determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the substantive scope of that agreement." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427–28 (Mo. banc 2003). In determining whether an arbitration agreement exists in this case, we look to the FAA and the Convention. If there is any conflict between the FAA and the Convention, the Convention controls. 9 U.S.C. § 208 (2000).[3] *See also M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 (6th Cir.1996).

## Analysis

The Defendants allege five points of error in their brief. However, these five points essentially allege that the trial court erred in not finding that the arbitration clause in the alleged Employment Letter applied to the claims against Neilson and that the arbitration clause in the Asset Purchase Agreement applied to the claims against the Corporate Defendants.

## The Employment Letter

■■■■ Neilson argues that the arbitration clause in his Employment Letter requires that all of the claims alleged against him be submitted to arbitration. The Plaintiffs argue that since Neilson did not sign the Employment Letter, under the Convention, there is no enforceable arbitration clause.[4] We agree.

Neilson first began his employment with a subsidiary of the Plaintiffs in 1995. In 1999, Neilson began working for another subsidiary of the Plaintiffs, which was a Bahamian company. This subsidiary would issue employment letters for its foreign service employees. In December 2000, Neilson relocated from Bermuda to North Carolina for personal reasons. As a result of the move, to reflect his new domicile, Neilson was sent a new Employment Offer letter, dated January 1, 2001. This is the Employment Letter that Neilson bases his claim for arbitration on.

The letter contained a paragraph compelling arbitration for any "claim by a party against another party arising out of or in relation to this agreement." It also stated that Neilson was required to "sign and return" a copy of the letter to signify his acceptance of the terms and conditions of employment contained in the letter. Neilson concedes that he never signed or returned the letter. The Plaintiffs argue that in July of 2002, he left his position in North Carolina and began working for one of the Plaintiffs' other divisions in Over-

---

**3.** 9 U.S.C. § 208 states: "Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent that that chapter is not in conflict with this chapter or the Convention as ratified by the United States."

**4.** The Plaintiffs also argue that even if we were to find that the Employment Letter was a valid arbitration agreement, it was for a previous position that Neilson had with one of its subsidiaries and was no longer applicable at the time of the alleged misconduct. We do not reach the issue.

land Park. The Petition alleges that it was while in this position that he committed the alleged misconduct and resigned from his position in April 2005.

Under Article II of the Convention, in order for an arbitration clause to be enforceable, it must be an "agreement in writing." The article defines "agreement in writing" to include "an arbitral clause in a contract or an arbitration agreement, *signed by the parties* or contained in an exchange of letters or telegrams." (Emphasis added.)

A representative of the Plaintiffs signed the Employment Letter. However, as Neilson concedes, he did not sign the letter, and, based on our review of the record, there was no "exchange of letters or telegrams." Therefore, under the Convention, there is no enforceable arbitration agreement.

Neilson attempts to compare this case to *Polytek Engineering Co. v. Jacobson Cos.*, 984 F.Supp. 1238 (D.Minn.1997), and *Gabriel Capital, L.P. v. Caib Investmentbank Aktiengesellschaft*, 28 A.D.3d 376, 814 N.Y.S.2d 66 (N.Y.App.Div.2006). However, neither of these cases presents facts analogous to our case.

In *Polytek*, Polytek was attempting to purchase rubber-recycling equipment from Jacobson that it needed for a contract with Hebei Import & Export. 984 F.Supp. at 1239. The Purchase Order between Polytek and Jacobson referenced and incorporated the contract between Polytek and Hebei, and the contract was attached to it. *Id.* The Hebei contract contained an arbitration clause. *Id.* A dispute arose and Polytek sought arbitration against Jacobson. *Id.* Jacobson denied being a party to the arbitration agreement. *Id.* at 1240.

The court in *Polytek* found that under the Convention, Jacobson was indeed a party to the contract. *Id.* at 1241. The court pointed to facsimiles that were sent and received between Polytek and Jacobson. In one such facsimile, a representative of Polytek asked that Jacobson issue a purchase order with the Hebei contract attached. *Id.* A representative of Jacobson responded that he would "issue a purchasing order with the contract as attachment to you within this week." *Id.* There was no argument that the purchase order governed the relationship between Polytek and Jacobson. *Id.* Additionally, there was correspondence between Jacobson and Polytek regarding the necessity of following a particular section of the Hebei contract. *Id.* A representative of Jacobson also confirmed the commencement of the contract. *Id.*

The decision of *Polytek* was based on the exchange of numerous facsimile and correspondence. Although the court does reference the "conduct" of the parties as illustrating the applicability of the contract, it does not hold that it was this behavior and not the "exchange of letters or telegrams" that controlled their holding that there was an applicable "agreement in writing." As previously mentioned, there is no "exchange of letters or telegrams" of any type between Neilson and the Plaintiffs. Therefore, *Polytek* is of no help to Neilson.

In *Gabriel*, there was an exchange of facsimiles and correspondence between Gabriel and a subsidiary CAIB. 814 N.Y.S.2d at 68. Gabriel was attempting to argue that since the subsidiary and not CAIB signed the agreement, CAIB could not attempt to enforce it. *Id.* However, the court disagreed with this contention. The court held, "the agreement reached by [Gabriel] and CISEG, CAIB's subsidiary, via exchange of documents ... incorporated by reference the arbitration clause of the purchase agreement signed by CISEG." *Id.* As in *Polytek*, the court does

reference the actions of the parties leading to the presumption of an agreement, but the court does not reference this as a deciding factor and is merely dicta. *See Id.* at 68–69. Therefore, like *Polytek, Gabriel* is of no help to Neilson.

We affirm the trial court's denial for the motion to stay based on the finding that there was no applicable arbitration clause between Neilson and the Plaintiffs.

### The Asset Purchase Agreement

■ We now turn to the Asset Purchase Agreement that was used by the Corporate Defendants to purchase from the Plaintiffs a portion of their business operation. The Corporate Defendants argue that the claims in the Plaintiffs' Petition fall under the "broad" arbitration clause in the Agreement and, therefore, must be arbitrated.[5] The Plaintiffs argue that the claims alleged in the Petition do not fall within the scope of the Agreement. We agree.

The arbitration clause in the Agreement states that "[a]ny Dispute must be exclusively and definitively resolved through final and binding arbitration. The Parties agree that this is a broad form arbitration agreement designed to encompass all possible Disputes, including Disputes over arbitrability or jurisdiction." "Dispute" is defined as:

> [A]ny dispute, controversy or claim (of any and every kind or type, whether based on contract, tort, statute, regulation, or otherwise) arising out of, relating to, or connected with this Agreement or the actions carried out under this Agreement, including any dispute as to the construction, validity, interpretation,

enforceability or breach of this Agreement.

■ "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc.*, 112 S.W.3d at 435. "Arbitration must be compelled where a tort claim arises directly out of a dispute regarding the terms of the parties' contract." *Nw. Chrysler-Plymouth, Inc. v. DaimlerChrysler Corp.*, 168 S.W.3d 693, 696 (Mo.App. E.D.2005). "The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties." *Greenwood v. Sherfield*, 895 S.W.2d 169, 174 (Mo.App. S.D. 1995). " 'At the very least, for a tort claim to be subject to arbitration under a broad arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract.' " *Rhodes v. Amega Mobile Home Sales, Inc.*, 186 S.W.3d 793, 798 (Mo.App. W.D.2006) (quoting *Estate of Athon v. Conseco Finance Servicing Corp.*, 88 S.W.3d 26, 30 (Mo.App. W.D.2002)). "Where a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not compelled." *Nw. Chrysler-Plymouth, Inc.*, 168 S.W.3d at 696.

In this case, the claims by the Plaintiffs against the Corporate Defendants include: civil conspiracy regarding the breach of Neilson's and other employees' confidentiality agreements and the breach of Neilson's fiduciary duties; tortious interference with confidentiality contracts of the former employees; aiding and abetting a breach of Neilson's fiduciary duties; and

---

**5.** The Corporate Defendants also argue that based on the arbitration clause found in the Agreement, it is the duty of an arbitrator to determine the arbitrability of these claims.

However, because we hold that the claims alleged by the Plaintiffs do not invoke the Agreement, the Agreement cannot control. Therefore, this point is denied.

tortious interference with prospective business expectancy or prospective business relationship regarding interference with business relationships. The Petition does not reference the Agreement in any way other than to provide factual information.

None of the claims made by the Plaintiffs arise out of, relate to, or are connected with the Agreement, as the arbitration clause requires. None of the claims are based on actions connected to the Agreement or carried out under the Agreement. None of the allegations require reference to or construction of the Agreement. All of the claims alleged in the Petition could have been brought even if the Agreement had never been signed. Based on the claims raised in the Petition, the arbitration clause in the Agreement is not applicable. The denial of the motion to stay by the trial court is affirmed.

## Conclusion

The judgment of the trial court is affirmed. None of the claims by the Plaintiffs are covered by an arbitration agreement. Neilson did not sign the Employment Letter; therefore, there is no "agreement in writing" "signed by the parties" as required by the Convention. The claims brought by the Plaintiffs against the Corporate Defendants do not arise out of, relate to, or are connected to the Asset Purchase Agreement; thus, they are not subject to the arbitration clause found therein.

SPINDEN and HOLLIGER, JJ., concur.